HARRIS VS HARDRIDGE ET AL.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 826).

*Indian Lands—Statutes.*
> Act June 28, 1898, c. 517, 30 Stat. 507, Act March 1, 1901, c. 676,
> § 7, 31 Stat. 863, and Act June 30, 1902, c. 1362, § 16, 32 Stat.
> 643 prohibited the transfer of Creek Indian land. Therefore an
> agreement between a Creek freedman, not of Indian blood, to
> convey certain land as soon as he received a deed for it was invalid
> and was not validated by the Act of Cong. April 21, 1904, c.1402,
> 33 Stat. 204, which removed the restrictions from the sale of lands
> by persons not of Indian blood.

Appeal from the United States Court for the Western District of the Indian Territory; before Justice Louis Sulzbacher, December 21, 1905.

Action by James A. Harris against Adam M. Hardridge and others. From an order sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

On December 10, 1904, the plaintiff below, appellant here, filed his complaint in equity as follows:

James A. Harris, a citizen of the United States of America and a resident of the city of Wagoner, in the Western judicial district of the Indian Territory, brings this his bill against Adam M. Hardridge, a Creek freedman, and Martha Hardridge, his wife, and George W. Ruble and Mary Ruble, his wife, and G. R. Gordon and Miaulis Gordon, his wife, citizens of the United States of America and residents of the city of Wagoner, Ind. Ter. And thereupon your orator complains and says: That on, to wit, the 7th day of September, A. D. 1900, defendants Adam M. Hardridge and Martha Hardridge contracted and agreed verbally to sell and convey to your orator by a good and valid deed the east sixty (60) acres of the southwest quarter of section twenty-two (22) township seventeen (17) north, range

eighteen (18) east of the Indian base and meridian as soon as
defendant Adam M. Hardridge should receive his deed for said
quarter section of land, for and in consideration of which your
orator then and there agreed and bound himself to sell and
convey by a good and valid deed to said defendants, the said
Adam M. Hardridge and Martha Hardridge, lot No. two (2)
in block No. four hundred thirteen (413) in the city of Wagoner,
together with all improvements thereon situated, said deed to be
delivered at the same time of the delivery of said deed by said
defendants Adam M. Hardridge and Martha Hardridge; that in
pursuance of said verbal contract of sale made as aforesaid
defendants Adam M. Hardridge and Martha Hardridge then
and there delivered possession of said sixty (60) acres of land
unto your orator, who has had and held and still holds possession
thereof, and who has made valuable improvements thereon by
plowing and fencing said land and maintaining same in a good
state of cultivation; that at the same time and in pursuance of
said contract of sale made as aforesaid your orator delivered
possession of said lot No. two (2) in block No. four hundred
thirteen (413) in the city of Wagoner, together with all im-
provements thereon situated, unto defendants Adam M. Hard-
ridge and Martha Hardridge, after having built a porch and
made other repairs to the dwelling house upon said premises,
free of charge to the said defendants as agreed upon; that it was
intended that the sale and exchange of said properties were
then and there completed and nothing left undone, except the
execution and delivery of proper deeds by said parties to said
properties; that theretofore and on, to wit, the 28th day of
October, A. D. 1901, said verbal agreement was reduced to
writing, fairly and substantially stating the terms and conditions
of said contract of sale, and was subscribed, sworn to, and
acknowledged by your orator and defendants Adam M. Hard-
ridge and Martha Hardridge in duplicate, and your orator kept
one of said writings, and said defendants Adam M. Hardridge

and Martha Hardridge kept the other of said writing, a copy of which contract is attached hereto, marked Exhibit A and made a part hereof; that your orator has ever been ready, willing, prompt, and eager to perform his part of said contract and to execute and deliver his good and valid deed to said lot No. two (2) in block No. four hundred thirteen (413) in the city of Wagoner, together with all improvements thereon situated, to said defendants Adam M. Hardridge and Martha Hardridge, and has many times offered and now offers to so execute and deliver said deed unto said defendants Adam M. Hardridge and Martha Hardridge, that your orator executed, and on the 10th day of December, A. D. 1904, tendered to said defendants Adam M. Hardridge and Martha Hardridge his deed to said lot No. two (2) in block four hundred thirteen (413) in the city of Wagoner, together with all improvements thereon situated, a copy of which deed is attached hereto, marked Exhibit B and made a part hereof; that said defendants Adam M. Hardridge and Martha Hardridge refused to accept said deed and still refuse to convey said sixty (60) acres of land unto your orator as they agreed and are bound to do.

"Your orator further shows unto your honor that defendant Adam M. Hardridge is a descendant of negro slaves who formerly belonged to members of the tribe of Creek Indians and who were entirely of African blood and not of Indian blood; that said defendant Adam M. Hardridge is enrolled upon the roll of Creek freedmen by virtue of which, under the law, said defendant Adam M. Hardridge is entitled to select and receive from and out of the lands of said tribe of Creek Indians an allotment of one hundred sixty (160) acres of land and to have said land segregated and set apart to him and have a deed from said Indian nation therefor; that at the time said contract of sale was made aforesaid defendant Adam M. Hardridge had duly selected said sixty (60) acres of land as part of his allotment and had the right to and he was in actual possession thereof;

that on, to wit, the 13th day of October, A. D. 1902, said Indian nation, with the approval of the Secretary of the Interior, executed and thereafter delivered to said defendant Adam M. Hardridge a deed to his said allotment of land, which included said sixty (60) acres; that thereafter and on, to wit, the 22 day of April, A. D. 1904, and while both your orator and said defendants Adam M. Hardridge and Martha Hardridge were performing in good faith said contract of sale, the Congress of the United States removed the restrictions theretofore placed upon said defendant Adam M. Hardridge and all others not of Indian blood, and permitted defendant Adam M. Hardridge to sell said sixty (60) acres of land, without restrictions or approval of the honorable Secretary of the Interior. Your orator charges that thereafter and on, to wit, the 13th day of May, 1904, in violation of their said contract of sale and their duty to your orator, said defendants Adam M. Hardridge and Martha Hardridge attempted to sell and did make and deliver a pretended deed for said sixty (60) acres of land to defendants George W. Ruble and G. R. Gordon; that said defendants George W. Ruble and G. R. Gordon paid to said defendants Adam M. Hardridge and Martha Hardridge the sum of four hundred dollars ($400), and promised and agreed to pay them the further sum of one thousand dollars ($1,000), to secure the payment of which defendants George W. Ruble, Mary Ruble, G. R. Gordon and Miaulis Gordon executed a mortgage on said land in favor of defendants Adam M. Hardridge and Martha Hardridge, conditioned as aforesaid. Your orator further charges that said contract of sale between your orator and defendants Adam M. Hardridge and Martha Hardridge was fair and the consideration therefor was valuable and adequate; that the pretended sale by defendants Adam M. Hardridge and Martha Hardridge to defendants George W. Ruble anh G. R. Gordon was and is a fraud upon the rights of your orator, and that defendants George W. Ruble and G. R. Gordon

took the deed to said land with full knowledge of the rights of your orator in the premises; that defendants Adam M. Hardridge and Martha Hardridge have no property subject to execution, but are wholly insolvent.

"Wherefore and inasmuch as your orator is remediless in the premises under and by the strict rules of law and can only have relief in a Court of Equity, where matters of this nature are properly cognizable, he files his bill of complaint, and, premises considered, prays: (1) That this honorable court grant unto your orator writs of subpoenas of the United States of America, issued out of and under the seal of this honorable court, directed to defendants Adam M. Hardridge, Martha Hardridge, George W. Ruble, Mary Ruble, G. R. Gordon, and Miaulis Gordon, commanding said defendants and each of them at a time and place named therein to personally appear and be before this honorable court, then and there to answer the allegations and charges aforesaid, and to stand and abide by such orders and decrees as shall be made herein as to your honor shall seem equitable and just. (2) Your orator further prays that your honor render a decree herein and cancel and set aside said deed from Adam M. Hardridge and Martha Hardridge to George W. Ruble and G. R. Gordon. (3) Your orator further prays for specific performance of said contract and that a decree be entered herein investing your orator with all the right, title, and interest in and to said sixty(60) acres of land. (4) Your orator further prays for such other relief in the premises as may seem proper to your honor and in accordance with equity and good conscience. And your orator as in duty bound will ever pray."

On March 7, 1905, defendants below, appellees here, filed their demurrer to said complaint as follows: "Come now the defendants and demur to the complaint of plaintiff, and for cause of demurrer say that the facts set forth in said complaint do not constitute a cause of action against them or either of

them. Wherefore they pray judgment for costs and for all legal and proper relief."

On December 21, 1905, the court sustained the demurrer filed by said defendants, and dismissed the complaint, to which plaintiff excepts, and prays and is allowed an appeal to this court.

*Robert F. Blair*, for appellant.

*Chas. G. Watts, De Roos Bailey*, and *Thomas H. Owen*, for appellees.

TOWNSEND, J. (after stating the facts as above). Appellant filed the following assignments of error: "The court erred in sustaining respondent's demurrer and in dismissing appellant's bill, because said bill contained a statement of facts in manner and form properly charged and set forth to constitute a good and sufficient cause of action against said respondents to entitle appellant, in equity, to the relief therein prayed."

Appellant contends: First, that the contract made between him and appellees Adam M. Hardridge and Martha Hardridge on the 7th day of September, A. D. 1900, was not in violation of any law then existing, but was a good and legal contract and ought to be specifically performed by said appellees; second, that if said contract was an illegal contract at the time it was made both appellant and said appellees continued to perform it and recognize it as being legal and binding after the restrictions were removed by the act of Congress of April 21, 1904 (33 Stat. 204, c. 1402), and that after said date said contract became and was, by the actions of the parties thereto, a valid, legal, and binding contract and ought to be specifically enforced in a Court of Equity. As is shown by plaintiff's complaint, on September 7, 1900, appellant and appellees Hardridge and wife made a verbal contract by which appellees Hardridge and wife agreed to convey to appellant Harris 60 acres of land, "as soon as defendant Adam M. Hard-

ridge should receive his deed for said quarter section of land,"
in consideration for which appellant, Harris, agreed to convey
to appellees Hardridge and wife lot 2 in block 413 in the city of
Wagoner, with improvements. Appellees Hardridge and wife
delivered possession of the 60 acres to appellant. At the same
time appellant delivered possession of lot 2, block 413, to ap-
pellees. On October 28, 1901, said verbal agreement was reduced
to writing and signed by the parties. Appellant, on December
10, 1904, tendered to appellees Hardridge and wife a deed for
said lot. Appellees refused to accept it, and refused to convey
to appellant the 60 acres. ' Appellee Adam M. Hardridge is
enrolled as a Creek freedman, and is entitled to an allotment
of 160 acres of land, and at the time this contract herein stated
was made had selected said 60 acres as part of his allotment,
and was in possession of the same. On April 22, 1904, the re-
strictions were removed by act of Congress upon all persons
not of Indian blood, which enabled appellee Hardridge to convey
said 60 acres. On May 13, 1904, appellees Hardridge and wife
attempted to sell, and did make and deliver a pretended deed
to said 60 acres to appellees Ruble and Gordon.

Under Act June 28, 1898, c. 517, 30 Stat. 507, known as
the "Curtis Bill," it was "provided further that the lands
allotted shall be nontransferable until after full title is ac-
quired and shall be liable for no obligations contracted prior
thereto by the allottee, and shall be nontaxable while so held."
Hence, when the contract was entered into on September 7,
1900, as alleged by appellant, the land to be allotted was non-
transferable until after full title is acquired' Under Act March
1, 1901, c. 676, 31 Stat. 861, entitled "An act to ratify and
confirm an agreement with the Muskogee or Creek Tribe of
Indians, and for other purposes," it was provided: "(7)
Lands allotted to citizens hereunder shall not in any manner
whatsoever, or at any time, be incumbered, taken or sold to
secure or satisfy any debt or obligation contracted or incurred

prior to the date of the deed to the allottee therefor and such lands shall not be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement, except with the approval of the Secretary of the Interior." Hence, Congress again provided that the land "shall not be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement." Under Act June 30, 1902, c. 1362, 32 Stat. 641, entitled "An act to ratify and confirm a supplemental agreement with the Creek tribe of Indians and for other purposes," it was provided as follows: "(16) Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years fro    the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear.    *    *    *    Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

It is in our judgment conclusive that this agreement to convey, under the foregoing provisions, is illegal and void. In Pomeroy's Equity Jurisprudence, vol. 1, § 402, it is said: "Wherever a contract or other transaction is illegal, and the parties thereto are, in contemplation of law, in pari delicto, it is a well-settled rule, subject only to a few special exceptions depending upon other considerations of policy, that a Court

of Equity will not aid a particeps criminis, either by enforcing the contract or obligation while it is yet executory, nor by relieving him against it, by setting it aside, or by enabling him to recover the title to property which he has parted with by its means. The principle is thus applied in the same manner when the illegality is merely a malum prohibitum, being in contravention to some positive statute, and when it is malum in se, as being contrary to public policy or to good morals." And in Bishop on Contracts, §§ 594 and 609: "Sec. 594. * * * When, therefore, the carrying out of a contract is thus forbidden by law, the decisions are uniform that the party who was under obligation to do the thing is excused. * * * Sec. 609. * * * On this principle, a man who has promised to do a thing, but is prevented by overwhelming necessity, or by an interdict from the law, will not be compelled to suffer as for a breach of contract. * * And, within the present topic, the standard of necessity is what comes from the act of God, the act of a public enemy, or the forbidding of the thing by law."

We are of the opinion that the authorities cited by appellant in which specific performance was decreed are not applicable where the contract sought to be enforced is declared absolutely void by statute, and that equity will not enforce a void contract. The authorities cited as to the validity of leasehold interests have no application to the question discussed in the case at bar.

It is our judgment that the court below was correct in its judgment, and it is therefore affirmed.

GILL, C. J., and CLAYTON and LAWRENCE, JJ., concur.