## SCRAPER v. BOGGS *et al.*

No. 681.   Opinion Filed January 10, 1911.

INDIANS—Allotments—Leases—Restrictions. On the 15th day of June, 1904, B. procured an agricultural lease from a Creek allottee for a period of five years. Prior to that time, to wit, on the first day of August, 1902, the same allottee had executed a like lease to the same land to O., which lease was purchased by B. As a part of the consideration for the lease between the allottee and B., it was agreed between them that B. would surrender any rights that he might acquire by reason of his purchase of the prior lease to O. Held, that the lease from the allottee to B. is not in contravention of the federal statute which provides that "Creek citizens may rent their allotments for strictly nonmineral purposes for a term of not exceeding one year for grazing purposes, and for not exceeding five years for agricultural purposes, but without stipulation or obligation to renew the same."

(Syllabus by the Court.)

*Error from District Court, Okfuskee County; John Caruthers, Judge.*

Action by Jennie J. Scraper against William Boggs and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*J. G. Potter,* for plaintiff in error.

*C. T. Huddleston,* for defendants in error.

KANE, J. This was an action of ejectment, commenced in the district court of Okfuskee county by the plaintiff in error, plaintiff below, against the defendants in error, defendants below, to recover possession of certain lands situated in said county. The plaintiff claimed title to the land by virtue of a deed executed by a Creek allottee, which was duly approved by the Secretary of the Interior. The answer of the defendants admitted the title to be in the plaintiff, and alleged that defendant Boggs was in possession of same under a lease made and executed by said allottee on the 15th day of June, 1904. It was further alleged that on or about the first day of August, 1902, said allottee executed to the Okemah Land Company a lease which began to run about the first day of January, 1903, for a period of five years; that said lease was never filed for record; that thereafter said lease was assigned to one Caldwell, and on the 15th day of June, 1904, said Caldwell assigned the same to the defendant Boggs, who immediately went into possession of said premises; that on the same day said defendant procured from said allottee the agricultural lease above referred to for a term of five years, which lease was duly filed in the office of the clerk of the United States court at Okmulgee; that on the 7th day of March, 1905, the defendant procured of said allottee another agricultural lease of said premises for a term of five years, which was duly recorded in the office of the clerk of the United States court at Okmulgee; that said leases as executed respectively on the 15th day of June, 1904, and March 7, 1905, were executed during the life of the prior five-year lease on which defendant was holding said land, and that said leases and each of them were not approved by said secretary as required

by law and were not approved in any manner by the Secretary of the Interior. The answer of the defendant admitted the legal title to be in the plaintiff, the execution and assignment of the Okemah Land Company lease and the execution of the lease to himself, but denied that the leases or any of them were void. Upon the issues thus joined, there was a trial by jury, which resulted in a verdict for the defendants, upon which judgment was duly entered. To reverse this judgment, this proceeding in error was commenced.

Counsel for plaintiff in error contends that the taking of the leases of June 15 and March 7, during the five-year term under which defendant was holding said land, to wit, under the former lease of the Okemah Land Company, which expired July 1, 1908, was but a subterfuge to avoid the force of the federal statute, which provides that "Creek citizens may rent their allotments for strictly nonmineral purposes for a term of not exceeding one year for grazing purposes, and for not exceeding five years for agricultural purposes, but without stipulation or obligation to renew the same." The court submitted the case to the jury upon the theory that it was established by the evidence that on the 15th day of June, 1904, the defendant Boggs procured an agricultural lease for a period of five years and said lease was duly executed, acknowledged and recorded, and, as a part of the consideration of the Boggs agreement to surrender and cancel all right he had under the Caldwell lease, the defendant Boggs would be entitled to hold the premises for a period of five years from that day. We believe the instruction is unobjectionable. There is nothing in the transaction between Caldwell and Boggs that runs counter to that part of the federal statute above quoted. The only obstacle in the way of the allottee making a lease to Mr. Boggs was the prior lease of Caldwell, and after that was removed by its purchase and surrender another lease would be perfectly valid. As we understand the case from the record, Mr. Boggs does not claim any right to occupancy except under the agricultural lease taken in his own name for a period of five years. If all the other leases were void,

he would still be entitled to possession for the period covered by the valid lease. *Whitham v. Lehmer,* 22 Okla. 627. The facts in that case and the case at bar are, in a good many respects, similar. Mr. Chief Justice Dunn, who delivered the opinion for the court, said:

"It is the contention of plaintiff that because the allottee executed these leases, the terms of which in the aggregate ran for a period longer than five years, this rendered them all null and void and of no force or effect to protect the lessee in his possession under either or any of them. It is plaintiff's contention that the Ward & Kee lease made August 2, 1902, was void because made prior to the 8th day of August, 1902, which was the date he contends the law granting the privilege of making an agricultural lease for five years became effective. He contends that both the Hutchinson and Weaver leases were void because they were involved in the excessive term granted by the allottee, and being so involved, neither of them was a protection to the lessee. If the Ward & Kee lease was invalid, as contended for by plaintiff, then there was nothing to preclude the allottee from making, and the defendant from taking, another lease. On the other hand, if the Ward & Kee lease was valid, then the defendant, having purchased it, had a right to claim under it. The making of the Hutchinson lease or the Weaver lease, independent transactions, with the terms they carried, might render them void; but the fact that they were void would in no wise affect the validity of the valid lease. So that it is unnecessary for us to say whether the Ward & Kee lease was valid or invalid, and we decline to pass upon it further than to hold it, for the purposes of this case, in the same light in which it was held by, not only the plaintiff, but also by the allottee and the defendant, all of whom have treated it as if it were void. This being true, then there remained nothing to preclude the allottee from making a valid lease, and we find that on September 11, 1902, and after the supplemental agreement was in full operation, he executed and delivered the Hutchinson lease to run for a period of five years from April 1st of the following year. This lease was an independent contract from the Ward & Kee lease. It did not mention it, and there is no evidence to show that it was intended to renew it for another term, or that there was any stipulation or obligation for its renewal. There is nothing in the act to preclude the allottee from making a lease to begin at some future date, and the fact that the term of the lease

bearing the date of September 11, 1902, was not to begin until April 1, 1903, in no wise, in our judgment, affected its validity."

The judgment of the court below is affirmed.

DUNN, C. J., and HAYES and WILLIAMS, JJ., concur; TURNER, J., not participating.