## CHAPMAN v. SILER.

### No. 1431. Opinion Filed January 16, 1912.

#### (120 Pac. 608.)

1. **INDIANS—Allotted Lands—Alienation.** The restrictions on the alienation or other disposition of allotted lands imposed by the Congress of the United States and by treaty stipulation with the various Indian Tribes were not removed or impaired by the adoption of the Constitution and the erection of the state of Oklahoma. And such restrictions remain in force since statehood, and will so remain until they expire by their own limitation, or are removed by Congress.

2. **SAME—Allotted Lands—Lease—Validity.** An agricultural lease of restricted lands made since statehood by a Choctaw Indian in violation of the provisions of the Atoka Agreement ratified and approved by act of Congress June 28, 1898 (Act June 28, 1898, c. 517, 30 Stat. 495), as modified by act of Congress approved April 26, 1906 (Act April 26, 1906, c. 1876, 34 Stat. 137), is void, and the validity of such lease may be questioned in an action by the grantee of the allottee, who holds under a deed from such allottee, made after her restrictions have been removed.

.(Syllabus by Brewer, C.)

*Error from District Court,, McClain County; R. McMillan, Judge.*

Action by J. G. Siler against A. J. Chapman. Judgment for plaintiff, and defendant brings error. Affirmed.

*H. A. Ledbetter,* for plaintiff in error.

*J. W. Hocker,* for defendant in error.

Opinion by BREWER, C. This is a suit in ejectment brought by defendant in error, as plaintiff below, in the district court of McClain county, Okla:, to recover certain lands, viz., the S. W. ¼ of the S. E. ¼ of the N. W. ¼, and the W. ½ of the E. ½ of the S. W. ¼ and the S. ½ of the N. W. ¼ of the S. W. ¼, and the S. W. ¼ of the S. W. ¼ of section 32, township 6 N., range 3 W., of the Indian base and meridian, in the state of Oklahoma. The plaintiff in error, as defendant below, appeared and filed answer. A demurrer to the answer was

sustained by the trial court. Defendant refused to plead further, judgment was rendered for plaintiff, and the defendant, as plaintiff in error, brings error to this court.

The sufficiency of the petition below was not challenged. The answer contained, first, a general denial; second, it alleged by way of special defense that defendant had a right to possess the lands in suit by reason of a certain five-year lease, executed by one Elmire Whale, a Choctaw Indian woman. The lease is set out as part of the answer. It shows substantially the following facts: That it was executed by Elmire Whale, a Choctaw woman, December 16, 1907; that the lands were part of her allotment; that she did not acknowledge the instrument; that the lease was recorded by the register of deeds for McClain county March 19, 1908.

The pleadings in this case are not very full on either side, but from them and the statements in the briefs of respective counsel we gather the following facts: Elmire Whale was a Choctaw Indian woman. The lands in controversy were part of her allotment. On the date of the lease the restrictions had not been removed. She signed the lease, but did not acknowledge it. It was recorded without her acknowledgment on the ninety-fourth day after its execution. Subsequent to the date of the lease, and after the restrictions had been removed, Elmire Whale, the allottee, sold and conveyed the land to the plaintiff below. The theory of the trial court in sustaining the demurrer, and as urged here by defendant in error, was that the lease relied on by defendant showed upon its face that it was made in violation of certain provisions of the acts of Congress relative to the leasing of restricted allotments, and was therefore void. The theory of plaintiff in error is that upon the adoption of the Constitution, and the erection of the state of Oklahoma, the restrictive provisions contained in the acts of Congress relative to the leasing of allotted lands were abrogated, and were no longer of force and effect. In what is commonly called the Atoka Agreement, ratified by Congress and approved June 28, 1898 (Act June 28, 1898, c. 517, 30 Stat. 495), we find the following provision:

"That all contracts looking to the sale or incumbrance in any way of the land of an allottee, except the sale hereinbefore provided, shall be null and void. No allottee shall lease his allotment, or any portion thereof, for a longer period than five years, and then without the privileges of renewal. Every lease which is not evidenced by writing, setting out specifically the terms thereof, or which is not recorded in the clerk's office of the United States court for the district in which the land is located, within three months after the date of its execution, shall be void, and the purchaser or lessee shall acquire no rights whatever by an entry or holding thereunder. And no such lease or any sale shall be valid as against the allottee unless providing to him a reasonable compensation for the lands sold or leased."

The above provision was modified by the act of Congress. approved April 26, 1906 (Act April 26, 1906, c. 1876, 34 Stat. 137), to the extent only in cases like the one at bar of exempting from the provisions of the former act agricultural leases for not to exceed a period of one year. That an agricultural lease of the allotted lands of a citizen of the Creek Nation in violation of the Creek Supplemental Agreement (Act June 30, 1902, c. 1323, 32 Stat. 504) is void has been substantially held in an opinion by Justice Dunn in the case of *Whitman v. Lehmer,* 22 Okla. 627, 98 Pac. 351. In that case it is said in the opinion:

"The act in question in our judgment by providing that an allottee may make a lease of his land for agricultural purposes, but without any obligation or stipulation for a renewal thereof for a term of not to exceed five years, is intended to make it impossible for an allottee to make a valid lease of his land for a longer period than five years, and to render invalid any such lease for five years carrying with it an obligation or stipulation for its renewal."

In the case of *Williams et al. v. Williams,* reported in 22 Okla. 672, 98 Pac. 909, Justice Hayes does not seem to doubt but that a violation of the provisions would invalidate the lease, although in that case the lease under consideration was held valid for the reason that, under the facts, it was not in contravention of the law. The same may be said of the holding in *Scraper v. Boggs et al.,* 27 Okla. 715, 117 Pac. 193, by Justice Kane. The lease in this case was not made and recorded in compliance with the provisions of the law, relating to the leasing of restricted lands.

It was not recorded within three months after its execution, and was not entitled to record at any time, because not acknowledged, either under the law in force in Indian Territory prior to statehood or under the registration laws in force at the time it was offered for record.

Plaintiff in error urges that although his lease was not acknowledged, and was not entitled to registration, yet that the defendant in error had actual notice of his lease, and knew of such facts as would put a prudent man on his inquiry. If his lease was void, because in violation of, or rather because not made in conformity to the law, this contention cannot be sustained. In *Simmons v. Whittington,* 27 Okla. 356, 112 Pac. 1018, the third paragraph of the syllabus is as follows:

"A grantee of an allottee, after the order removing the allottee's restrictions upon alienation became effective, may attack the validity of deeds executed by the allottee before the removal of her restrictions conveying the same lands, although the grantee had notice of such deeds before his purchase from the allottee."

It has been seen that the sole defense in this case is based on an agricultural lease, not in conformity to the enactments of Congress and the treaty stipulations with the Choctaw and Chickasaw Tribes. It is not contended that this lease would have been valid if executed prior to the erection of the state, but it is contended that, being executed since, it is valid, on the theory that these restrictive provisions were abrogated by the adoption of the Constitution and the erection of a state government, but, on the contrary, we believe and hold that they were preserved in their integrity by the terms of the Enabling Act and the provisions of the Constitution, until they either expire by their own limitation or are removed by the Congress of the United States. Many questions involving the restrictions and limitations placed on the alienation of Indian allotments by acts of Congress and treaty stipulation have been examined and passed upon by this court, but in the main these questions arose out of land contracts executed prior to statehood. The case, however, of *Jefferson v. Winkler,* 26 Okla. 653, 110 Pac. 755, seems to conclude the contention in this case against the position taken by plaintiff in error. That

case presented the question of whether an Indian minor, who married since statehood, could convey her allotment the same as though she were an adult, under the statutes of this state. This court held otherwise, and in the course of the opinion Justice Hayes for the court says:

"Throughout the act of Congress commonly known as the 'Enabling Act,' under which the Indian Territory and the territory of Oklahoma were admitted into the Union as one state, the Indians of the Five Civilized Tribes of the Indian Territory were treated as citizens of the proposed state, and are so treated by the provisions of the Constitution; but said Enabling Act contains a proviso which requires 'that nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territory (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed.' Act June 16, 1906, c. 3335, 34 Stat. 267 [U. S. Comp. St. Supp. 1909, p. 154]. By one of the provisions of the Enabling Act, the people of the state, acting through their representatives and delegates to the Constitutional Convention, were required to, and did, by an ordinance irrevocable, accept the terms and conditions of said act. It is unnecessary to comment upon the extent or limitation of the authority over the lands and property of such Indians that is by said provision of the Enabling Act reserved to the United States government; for, whatever be the extent of that authority or its limitations, we think it cannot be questioned that said authority reserved is sufficient to retain in the government of the United States jurisdiction over the restricted lands of said Indians to determine and provide how and in what manner such restrictions shall be removed; and that, until such restrictions shall be removed, the lands of said Indian minor allottees are not within the jurisdiction of the probate courts of the state with power in said courts to order the sale thereof for any purpose. Since the power to remove such restrictions is wholly within Congress, it may say upon what terms and conditions they will be removed, and under the supervision of what court or officer the sale of same shall be made."

The fact that the answer in this case which was stricken down by the court on demurrer contained a general denial must

be mentioned. But as to whether or not such fact would require a reversal in a case where a special defense goes out properly on demurrer need not be considered in this case. It is apparent from the record and from the briefs of counsel that the special defense set up in this case was relied upon solely, and that the general denial was abandoned at the hearing on the demurrer. In the judgment of the court appears the following:

"The defendant C. R. Smith having disclaimed all interest in the lands sued for, and the defendant William Keeler being in default, and the said A. J. Chapman, defendant, relying upon his lease as plead in his answer, and declining to plead further, the court finds for the plaintiff," etc.

In the brief of defendant in error appears the following statement which supports the record, and has not been challenged:

"In the argument of the case in the trial court it was clearly stated and understood that the rights of defendant in error, both as to his title and right of possession, were not disputed by the plaintiff in error A. J. Chapman, except by reason of the lease of December 16, 1907, and we suggest that while the record does not positively show an election, although he did so elect to stand upon the 'specific denial,' having been asked during the argument if he stood thereon, and we submit that such was proper practice."

Counsel for plaintiff in error abandons the matter in his brief in the following words at page 5 thereof:

"At this time I wish to say that the other questions raised are of such importance to the Indian Territory portion of the state that if the error first assigned (that is, the answer contained a general denial) will prevent the court from further considering the other questions raised under the first assignment (that is, paragraphs b and c) paragraph a need not be considered."

Therefore we treat the question of the answer having contained a general denial as having been abandoned in the trial court, and to the same effect as if it had been formally stricken from the answer before the demurrer was passed upon. The death of the defendant in error, J. G. Siler, since the filing of this appeal in this court has been suggested, and the cause has been revived in the name of his heirs, to wit, Emma Siler, widow,

and Fay Siler, May D. Siler, J. Granville Siler, and Eunice Siler, minor children of deceased defendant in error.

Therefore the only defense offered in this case being subject to demurrer, the judgment of the trial court should be affirmed.

By the Court:   It is so ordered.

All the Jutices concur.