## SCHERER v. HULQUIST.

No. 2142.    Opinion Filed January 7, 1913.

Rehearing Denied September 29, 1913.

(130 Pac. 544.)

**INDIANS—Creek Citizens—Leases—Validity.** Under section 17 of the Supplemental Creek Treaty, c. 1323 (Act of June 30, 1902, 32 St. at L. 504), which provides that Creek citizens may rent their allotments for agricultural purposes for a term not to exceed five years, but without stipulation or obligation to renew the same, a lease executed by a Creek citizen during the life of a prior valid lease, but which does not exceed the term of five years from the date of the new lease, is valid.

(Syllabus by Ames, C.)

· Error from District Court, Wagoner County;
Robert M. Rainey, Assigned Judge.

Action by Charles C. Hulquist against C. D. Scherer. Judgment for plaintiff, and defendant brings error. Affirmed.

W. W. Noffsinger, for plaintiff in error.

Watts & Watts, for defendant in error.

Opinion by AMES, C. On the 16th day of September, 1902, Jasper Sarty, a citizen of the Creek Nation, executed to W. A. Garrison an agricultural lease upon the land involved for a term of four years, commencing on the 1st day of January, 1903. Thereafter, on the 31st day of May, 1904, said Jasper Sarty executed to Charles C. Hulquist, the plaintiff, an agricultural lease upon the same land for a term of three years, commencing on the 1st day of January, 1906. Thereafter, on the 25th day of September, 1905, the said Jasper Sarty conveyed the land by general warranty deed to C. D. Scherer, the defendant in this case. The defendant took possession under his deed, and the plaintiff brought this suit to recover damages because the defendant wrongfully withheld possession from him, claiming possession under the second lease executed by Sarty.

The only question presented for our consideration is whether the existence of the Garrison lease rendered the Hulquist lease void from its inception. The trial court held that it was valid, and Hulquist recovered damages. No question is raised as to the measure of damages or the form of the action; but the only question presented is the validity of the lease. It is the contention of the defendant that the lease is void, under section 17 of the Act of June 30, 1902, known as the Supplemental Creek Treaty, c. 1323, 32 St. at L. 504. Section 17 is as follows:

"Creek citizens may rent their allotments, for strictly non-mineral purposes, for a term not to exceed one year for grazing purposes only and for a period not to exceed five years for agricultural purposes, but without any stipulation or obligation to renew the same. Such leases for a period longer than five years for agricultural purposes, and leases for mineral purposes may also be made with the approval of the Secretary of the interior, and not otherwise. Any agreement or lease of any kind or character violative of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity. Cattle grazed upon leased allotments shall not be liable to any tribal tax, but when cattle are introduced into the Creek Nation and grazed on lands not selected for allotment by citizens, the Secretary of the Interior shall collect from the owners thereof a reasonable grazing tax for the benefit of the tribe, and section 2117 of the Revised Statutes of the United States shall not hereafter apply to Creek lands."

It will be observed that this section permits the Creek citizens to rent their allotments for agricultural purposes for a period of five years, without the approval of the Secretary of the Interior, and for a longer period with his approval, and expressly declares any lease in violation of the act to be absolutely void.

The original Garrison lease extended from January 1, 1903, to January 1, 1907. The second or Hulquist lease was executed on May 31st, 1904, and extended from January 1, 1906, to January 1, 1909, and was therefore for a term of less than five years from the date on which it was executed. This is important. It will be observed that this is not a case of the Indian

making a lease for a term to commence *in futuro* and extending
for a period of five years from the commencement of the lease.
It is a case of a lease being made while another valid lease is out-
standing and to a different lessee, to commence *in futuro*, and not
extending to a time in excess of five years from the date on
which the lease is made. The question involved is whether, when
a valid lease for agricultural purposes is outstanding, the Indian
can make a new lease, or whether he must wait until the complete
expiration of the old lease before another can be executed. This
is the logic of the position taken by counsel for the defendant,
who placed their reliance upon the language of this court in
*Whitham v. Lehmer*, 22 Okla. 627, 632, 98 Pac. 351, 353, where
this section of the Supplemental Creek Treaty was under con-
sideration, and where Justice Dunn, in delivering the opinion,
says:

"* * * And also in our judgment the spirit and intention
of the act goes to the extent of precluding the allottee from leas-
ing his land in any manner, so that on the expiration of five years
from any date, after the beginning of the term of a lease granted,
he cannot have it free, clear, and unincumbered"

—and it is insisted that, under this language, the Indian lessor
cannot renew a lease or execute a new one until the complete
expiration of the old one, and that there must be an interval of
time, no matter how short, during which the land is free and
clear from every rental contract; in other words, that the Indian
lessor could make a new lease one minute after the expiration
of the old lease, but could not make a new one one minute be-
fore the expiration of the old one. We do not so interpret the
decision of the court. The question there involved grew out of
the execution of three leases by the Indian. The first lease was
executed prior to the time when the act under consideration be-
came operative. The court treated this lease as void for the
express reason that it was so treated by the plaintiff, the allottee,
and the defendant, and, holding it to be void, held that the second
lease was valid. It was also held that the third lease was invalid,
because:

" * * * The allottee could not, under the facts in this case
and the terms of the act, make a lease on August 8, 1903, which

would bind him and his allotment from January 1, 1904, to January 1, 1909, because, considering the term of the Hutchinson lease, it would cover a term of more than five years."

In *Scraper v. Boggs,* 27 Okla. 715, 117 Pac. 193, the syllabus is as follows:

"On the 15th day of June, 1904, B. procured an agricultural lease from a Creek allottee for a period of five years. Prior to that time, to wit, on the 1st day of August, 1902, the same allottee had executed a like lease to the same land to O., which lease was purchased by B. As a part of the consideration for the lease between the allottee and B., it was agreed between them that B. would surrender any rights that he might acquire by reason of his purchase of the prior lease to O. *Held,* that the lease from the allottee to B. is not in contravention of the federal statute, which provides that 'Creek citizens may rent their allotments for strictly nonmineral purposes for a term of not exceeding one year for grazing purposes, and for not exceeding five years for agricultural purposes, but without stipulation or obligation to renew the same.'"

This same section was before the court in *Williams v. Williams,* 22 Okla. 672, 98 Pac. 909, and *Groom v. Wright,* 30 Okla. 652, 121 Pac. 215; but this exact question was not touched upon in those cases.

The subject of overlapping leases is considered in several other cases which have escaped the attention of counsel in this case. In *Moore v. Girten,* 5 Ind. T. 384, 82 S. W. 848, it was held that, under the act of Congress allowing the Quapaw Indians to lease their lands for a term of three years, a lease of such lands, made in March, 1898, to begin in March, 1901, and to run for a term of two years, was valid, though made to one holding under a three-year lease from March, 1898. In *United States v. Abrams* (C. C.), 181 Fed. 847, Judge Campbell, District Judge of the Eastern District of this state, holds that, under the act of Congress permitting Quapaw Indians to lease their allotments for mining purposes for a term not exceeding ten years, a ten-year lease, executed during the life of a previous lease, is valid, provided that aggregate outstanding terms do not exceed ten years; and this holding is affirmed by the Circuit Court of Appeals in *United States v. Abrams,*

Scherer v. Hulquist.

194 Fed. 82, 114 C. C. A. 160, and *United States v. Noble,*
197 Fed. 292, 295, 116 C. C. A. 654, 657. In the latter case
it is said:

"It is contended that what is styled overlapping leases are
invalid; and, when an Indian allottee has leased his land for
ten years for mining purposes, he cannot again lease it until
the expiration of that period, and that such a construction would
be for the Indian's benefit and protection. It may be such a
provision would be for the Indian's better protection; but it
is for Congress to give the protection, and not the courts."

Creek citizens are citizens of the United States and of the
state of Oklahoma (Act Feb. 8, 1887, 24 St. at L. 390, c.
119, as amended by Act March 3, 1901, 31 St. at L. 1447, c.
868; Act June 16, 1906, c. 3335, 34 St. at L. 267), and as
such have the right to make contracts, except when limited by
law. In this case the express right to lease their lands for
agricultural purposes, for a term not exceeding five years, is
conferred upon them. The approval of the Secretary of the
Interior is not necessary, unless the lease is for a longer term.
The policy of the government is to give them such a measure
of control over their property as to train them in the duties
and responsibilities of citizenship and of property owners; and
it may be said to their credit that a very great per cent of
the cases in which their disabilities are relied upon are cases
to which they are not parties, and for which they are in no
way responsible. The act conferring upon them the right to
make these leases puts two limits; one is that the lease shall
not exceed the term of five years, and that it shall be without
any stipulation or obligation to renew the same. The lease
here involved expired within five years from the date on which
it was executed. It was not a renewal of any previous lease, and
it contained no stipulation or obligation to renew the same.
There is no claim of fraud and the Indian citizen is not seek-
ing to repudiate.

Believing that the lease is valid, and that it does not come
within any of the prohibitions of the act under consideration,
we think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.