## SIMMONS *et al.* v. WHITTINGTON.

No. 631.    Opinion Filed November 16, 1910.

1.    INDIANS—Lands—Restrictions on Alienation.  A deed conveying, or a contract for the sale of, a portion of a surplus allotment, made by a Choctaw Indian by blood before the removal of restrictions upon her power to alienate same, in violation of act of Congress, June 28, 1898, (ch. 517, sec. 29, 30 U. S. St. at L., p. 507,) and of act of Congress, July 1, 1902, (ch. 1362, secs. 15, 16, 32 U. S. St. at L., p. 643) is void.

2.    SAME—Rules and Regulations—Power of Secretary of the Interior.  The act of Congress, approved April 21, 1904, (33 U. S. St. at L. p. 204) authorizing the removal of all restrictions upon the alienation of allotted lands of members of the Five Civilized Tribes by blood, except minors and except as to homesteads, upon approval of the Secretary of the Interior under such rules and regulations as he may prescribe, authorizes the Secretary of the Interior to provide by general rule that no order removing the restrictions of any such allottee shall become effective until 30 days after its date; and a deed executed by an allottee after the date of the approval of the order removing restrictions upon the power of the allottee to alienate, but before the expiration of 30 days from the date of such order and approval, is void.

3.    SAME—Validity of Deeds—Who May Attack.  A grantee of an allottee after the order removing the allottee's restrictions upon the alienation became effective may attack the validity of deeds executed by the allottee before the removal of her restrictions conveying the same lands, although the grantee had notice of such deeds before his purchase from the allottee.

4.    SAME—Agreements to Purchase—What Constitutes.  The deed of one who purchases from an Indian allottee after the allottee's restrictions upon alienation have been removed is not rendered void because the purchaser before the removal of restrictions told the allottee, if when she obtained a removal of her restrictions upon alienation she could not find another buyer, he would buy her land, if they could agree upon a price.

(Syllabus by the Court.)

*Error from District Court, Carter County; S. H. Russell, Judge.*

Action by O. A. Simmons and others against W. F. Whittington. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

*Cottingham & Bledsoe*, for plaintiffs in error.
*W. F. Bowman*, for defendant in error.

HAYES, J.  The land in controversy in this action was, in the month of March, 1906, allotted to Virginia Jones, a Choctaw Indian by blood as a part of her surplus allotment.  Thereafter, by warranty deed, she conveyed the land to defendant in error, who will hereafter for convenience be referred to as defendant.  At the time she executed the deed, she excuted a contract to defendant, whereby she agreed that, as soon as the restrictions upon her power to alienate her surplus allotment should be duly removed, she would execute to him another warranty deed conveying the same land.  Defendant, at the time, paid her, as a consideration for the land and for the execution of said instrument, the sum of $385.  On the 23rd day of April, 1907, an order was made by the Secretary of the Interior removing the restrictions upon the alienation of the surplus land of said Virginia Jones; but, under the terms of said order and the rules and regulations prescribed by the Secretary of the Interior, the order was not to become effective until thirty days from the date thereof.  On the 23rd day of May, 1907, before the expiration of the thirty days after the date of the order removing the restrictions had expired, Virginia Jones and her husband executed a second warranty deed to defendant in pursuance of her contract so to do after the removal of the restrictions, and were paid by defendant an additional sum of $25.  On the 21st day of June, 1907, Virginia Jones executed and delivered to plaintiffs, for a consideration of $350, her warranty deed for said land, conveying the same to plaintiffs.  Since the execution of the first deed by the allottee to defendant, defendant has been and is now in possession of the land.

Plaintiffs brought this action in the court below to recover

possession of the land, and alleged in their petition the source of their title and right to possession to be said deed from the allottee to them. Defendant by his answer sets up the two deeds executed to him, and alleges that by them he acquired the fee simple title to the land; that plaintiffs acquired no right or title by the deed executed to them, for the reason at the time of the execution thereof the grantor had no title to convey; that defendant is in possession; and that the deed of plaintiffs is a cloud upon his title; and, by way of cross-petition, prays for judgment of the court quieting his title and canceling the deed of plaintiffs. The judgment of the trial court was for defendant, and grants to him all the relief prayed for in his answer and cross-petition.

Section 15 of the Supplemental Treaty with the Chickasaw and Choctaw Tribes of Indians (32 U. S. St. at L., p. 641) provides:

"Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided."

Other sections of the treaty make the homestead allotment inalienable during the lifetime of the allottee, not exceeding twenty-one years, and authorize and prescribe that a certain part of the surplus allotment shall be alienable after issuance of patent; one-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years. It was not contended in the court below that the restrictions upon the power of Virginia Jones to alienate her surplus allotment were removed, either at the time she executed the first deed to defendant, or at the time she executed the second deed to him, unless the Secretary of the Interior was without power in making the order removing her restrictions to provide that it should not become effective until thirty days after its date. The language of section 15, *supra,* is not ambiguous, and no amount of discussion could make its meaning clearer than the plain language used. By its terms, it is declared that the lands of an allottee shall not be affected or encumbered by deed, debt or

obligation of any character contracted prior to the time he is authorized to alienate his allotment under the act, and prohibits the sale of any part of his allotment, except as provided in the act. There also existed in force at the time of the execution of said deeds paragraph 29 of the act of Congress, approved June 28, 1898 (30 U. S. St. at L., p. 507), which provides that all contracts looking to the sale or encumbrance in any way of the lands of an allottee, except the sale thereinafter provided, shall be null and void. Any effort by an allottee to encumber or affect his land before the restrictions upon alienation have been removed or expired under the provisions of the act is void, not only because such act is in direct violation of the mandates of the statute, but because declared so by the statute. Construction and application of these sections of the statutes were made by this court in *Lewis et al. v. Clements,* 21 Okla. 167, wherein it was held that a contract to sell, made before the removal of restrictions, was void and could not be enforced in an action for specific performance after the removal of restrictions. See, also, *Sayer v. Brown,* 7 Ind. Ter. 675, 104 S. W. 877.

By an act of Congress, approved April 2, 1904 (33 U. S. St. at L., p. 204), it is provided:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, and all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian Agent at the Union Agency in charge of the Five Civilized Tribes, if said agent is satisfied, upon a full investigation of each individual case, that such removal of restrictions is for the best interest of said allottee."

Under the provisions of this statute, Virginia Jones made application for the removal of restrictions upon her alienation of the land in controversy, and said application was granted. But the order granting same had not become effective at the time of

the execution of the second deed by her to defendant, if the Secretary of the Interior had power to provide by rule and regulation that an order removing restrictions should not become effective for thirty days after its date. It is not contended by able counsel for defendant that such power could not be granted by Congress to the Secretary of the Interior; but that the language of the act does not confer such authority; that his power under the act relative to the removal of restrictions is limited to an investigation in each individual case to ascertain whether the removal would be for the best interest of the allottee; and, if he determines that it will be, to make an unconditional order of removal of the restrictions upon his power of alienation. We cannot concur in this contention, and we have been able to find no decided case construing statutes, treaties, or patents with similar provisions that supports interpretation of this statute contended for by defendant. In September, 1854, a treaty was concluded between the United States and the Chipawa Tribe of Indians, whereby the President of the United States was authorized from time to time to survey and to allot to certain members of the Chipawa Tribe of Indians eighty acres of land each and to issue patents therefor, with such restrictions upon the power of alienation as the President saw fit to impose. Acting under the provisions of this treaty, the President of the United States caused to be allotted to certain of the Indians named in the treaty tracts of land and issued therefor to the allottees a patent containing a restriction upon the power of the allottee to alienate his allotment, to the effect that he should not sell or lease in any manner the land conveyed by the patent "without the consent of the President of the United States." In *Starr v. Campbell,* 208 U. S. 527, it was held that these provisions of the treaty and of the patent authorized the President to prescribe rules and regulations to govern contracts for the sale of timber by the Indians to whom allotments had been made and patents issued, by which certain conditions and procedure were prescribed, and required such contracts to be approved by the Commissioner of Indian Affairs, which approval should operate as the specific consent of the

President to the sale of the timber. In that case it was contended that the power granted to the President extended no further than to authorize him to consent to the sale or refuse to consent; that he could put no conditions upon his consent. But the court declared such contention unsound. The language of the statute involved in the case at bar is equally as comprehensive as the language of the patent involved in that case. All restrictions upon the alienation of all the allottees of the classes named in the statute, except as to homesteads, may, with the approval of the Secretary of the Interior, be removed *under such rules and regulations as the Secretary of the Interior may prescribe.*

It is not mandatory upon the Secretary of the Interior to remove restrictions of any allottee; it is within his discretion. The application may be made to the agent of the Union Agency as prescribed by the statute, and said agent may be satisfied that it will be to the best interest of the allottee to remove his restrictions; yet, such fact does not require a removal thereof. It still remains within the discretion of the Secretary of the Interior to approve or disapprove the removal of the allottee's restrictions; and, if he removes them, to do so under the rules and regulations as he may prescribe. The rule complained of falls within this grant of power, and the Secretary of the Interior in this case had power to prescribe by general rule that no order of removal should be effective until thirty days from the date of its approval by him. It was so provided in the case at bar both by general rule and by specific provision in the order of removal.

In *United States v. Thurston County, Neb., et al.,* 74 C. C. A. 425, there was involved lands allotted to a member of the Winnebago Tribe of Indians under an act of Congress that made the lands inalienable for a certain period of time, during which they were held in trust by the United States for the benefit of the allottees and their heirs. The act of Congress of May 27, 1902 (32 U. S. St. at L., p. 275, c. 888, s. 7), provides that any heir of any Indian allottee to whom a trust or other patent containing restrictions on alienation had been issued may sell and convey the lands

inherited from such allottee, "but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser, the same as if a final patent without restrictions upon alienation had been issued to the allottee." The Secretary of the Interior, acting under the authority conferred by the language quoted, promulgated rules and regulations by which he permitted the owners of inherited Indian lands to sell on condition that they agreed that the proceeds of such lands should be placed in one or more banks, which should furnish satisfactory bond to guarantee the safety of the deposit, to the credit of each heir or his proportion, subject to the checks of said heirs only when approved by the agent or officer, for amounts not exceeding $10 in any one month, and subject to their checks for larger amounts only when approved by the agent specifically authorized by the Commissioner of Indian Affairs. It was contended in that case that these rules and regulations were unauthorized and that the only power of the Secretary of the Interior was to approve or disapprove the sale of any of such lands. But Mr. Circuit Judge Sanborn, delivering the opinion of the court, in discussing this question, said:

"Nor is the complaint without lawful authority to hold these proceeds and to control their disposition in the same way that it held and controlled the lands in trust for the benefit of these Indian heirs. The act of 1902 authorized these heirs to sell and convey their inherited lands only when the proposed sales were approved by the Secretary of the Interior. It thereby vested in the Secretary plenary power to permit or to forbid the sales proposed. The whole is greater than any of its parts, and includes them all, and the authority to allow or to prohibit proposed sales necessarily included the power to consider and determine the terms and conditions on which such sales should be approved."

So, we think in the case at bar that the plenary power conferred upon the Secretary of the Interior to approve or disapprove the application and removal of restrictions of any member of the Choctaw or Chickasaw tribes of Indians, as provided in the act of April 21, 1904, coupled with the specific requirement that when such removal is made it shall be under the rules and regulations

prescribed by the Secretary of the Interior, includes the power not only to approve or disapprove the removal of restrictions of the appellant, but to say when such order of removal, if it is made, shall take effect. It follows from this conclusion that, at the time Virginia Jones executed her second deed to defendant, the restrictions upon her alienation had not been removed, and that deed, like the first one, was void and in no manner affected the land it attempted to convey.

It is next contended by defendant that, if the deeds of the allottee to him for any reason be illegal, the right to challenge the illegality is personal to the allottee and cannot be availed of by plaintiff, who by the evidence is shown to have had knowledge of the execution and delivery of such deeds to defendant before they purchased the land from the allottee. But this contention is without merit. If the deeds made before the removal of restrictions were only voidable, there might be some support for this contention; but they are absolutely void, because prohibited by the law. They bind no one. In legal effect, they are nothing; and knowledge of their existence conveyed no notice of the rights of any one, because no one can claim any rights under them. A very similar question was decided by this court in *Bragdon v. McShea,* 26 Okla. 35, 107 Pac. 916. In that case a minor Creek freedman had, during her minority, conveyed to Bragdon her surplus allotment. McShea, who had knowledge of this transaction as a stockholder and officer in a land and investment company, received part of the purchase price paid by Bragdon to the allottee in payment of an indebtedness due the company by the allottee. After the allottee attained her majority, acting as the agent of Bell, McShea purchased from her her surplus allotment and received her warranty deed to Bell therefor. Bell afterwards conveyed the land to McShea, and McShea brought his action to have canceled as a cloud upon his title the deeds executed by the allottee to Bragdon. By section 16 of the Supplemental Agreement with the Creek Indians, approved June 30, 1902 (ch. 1323, 32 U. S. St. at L., p. 500), it is provided that lands allotted to citizens shall not in any

manner whatever or at any time be encumbered, taken, or sold to secure or satisfy any debt or obligation nor ·be alienated by the allottee or his heirs before the expiration of five years from the date of approval of the. agreement; and that any agreement or conveyance of any kind or character made in violation of said statute shall be absolutely void and not susceptible of ratification in any manner. In the opinion it was held that the deed executed by the said Indian minor during her minority to Bragdon was absolutely void by reason of the foregoing section of the Supplemental Agreement and incapable of ratification by her when she became of age; and that, on attaining majority, she had the right to convey her land to whomsoever she chose; and that Bell had the right to purchase; and that his grantee, McShea, obtained a good title.

In *Muskogee Land Co. v. Mullins,* 91 C. C. A. 213, a similar question was involved. In that case the land company had brought an action against the defendant to recover rents for certain premises reserved to it by the terms of a written lease. The defense was that the lease was void because in violation of section 17 of the act of Congress of June 30, 1902 (32 U. S. St. at L., p. 504, ch. 1323), which provides that Creek citizens may rent their property for strictly grazing purposes only, and for a period not to exceed five years for agricultural purposes, and any agreement violative of said provision shall be absolutely void. Defendant in that case attempted to show that the lease under which plaintiff was attempting to hold, while upon its face purporting to be for agricultural purposes, was for grazing purposes, and in violation of the law. The land company contended that the Creek citizens under whom they held alone could avoid the lease for such illegality, but the court said:

"We are unable to agree with the interpretation placed on the act of Congress by the land company, to the effect that its lessors, the Creek citizens, alone could avoid the lease for illegality. The act of Congress inaugurated a public policy specially applicable to wards of the nation, as the Indians, even after allotment, are held to be; and it is our duty to so apply the law as to subserve that policy so far as we may lawfully do so. The act in question is

couched in emphatic and comprehensive language. It declares 'any agreement or lease of any kind or character violative  *  *  * shall be absolutely void.' "

And it was held that the lease as between the land company and defendant was void, and the land company could not recover thereon.

By act of Congress, approved April 26, 1906, it is provided that:

"Conveyances heretofore made by members of any of the Five Civilized Tribes subsequent to the selection of allotment and subsequent to removal of restrictions where patents thereafter issue, shall not be deemed or held invalid solely because said conveyances were made prior to issuance and recording or delivery of patent or deed; but this shall not be held or construed as affecting the validity or invalidity of any such conveyance, except as hereinabove provided, *and every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby declared VOID.*  *  *  *" (34 U. S. St. at L., p. 114, s. 19.)

It is lastly contended by defendant that the deed of Virginia Jones to plaintiffs is void, because made in pursuance of an agreement made with her before the removal of her restrictions, in violation of the foregoing statute; but this contention is not supported by the evidence. It appears from the evidence that Bronaugh is the cashier of a bank to which Virginia Jones was, prior to the removal of her restrictions, indebted in the sum of $150, for which the bank held a note executed by her and by her brother as surety. To secure the payment of the note, the bank held a mortgage on certain property of her brother. The evidence tends to show that the bank was asking for payment of the note; that she offered to sell her land; that she was told by plaintiff, Bronaugh, that if she would have her restrictions removed and they could agree on a price, he would buy it. He said, "I will buy it if you can't sell it to somebody else and pay off the notes." The bank also made her a further loan of an amount sufficient to pay her expenses to Muskogee to make application to have the restrictions removed. When plaintiffs bought the land from her, with her consent, plaintiffs

paid to the bank the amount of her indebtedness to it and paid to her the balance of the purchase price in cash. This, in substance, constitutes the evidence relative to any agreement between them whereby she agreed to sell plaintiffs the land after the removal of restrictions. We do not think these facts sufficient to strike down the deed executed by her to plaintiffs. There is entirely wanting any evidence tending to show that she agreed that she would sell the land to plaintiffs, or any of them. There was never discussed between them any price for the land, nor was anything said or done toward an agreement other than that one of the plaintiffs stated that, if the allottee could not find a buyer, and they could agree upon the price, he would buy the land. This falls short of being a contract to purchase, if not short of an offer to buy. There was never any meeting of the minds of the parties. Such an alleged agreement, if there had been no prohibition of the statute against the alienation of the allottee's land, would not support an action for specific performance or to recover damages for violation thereof.

Prior to the enactment of April 26, 1906, contracts and agreements for the sale and purchase of allotments made before the removal of restrictions were void; but there existed no statute which specifically made deeds, procured after the removal of restrictions, in pursuance of contracts made before, void. Congress no doubt recognized that while such contracts to purchase and sell, made before the removal of restrictions, were void and could not be made the basis of an action for specific performance, designing persons, by procuring such contracts, could use them as a moral force to induce the Indian allottee, after the removal of his restrictions, to execute a deed which, when obtained, would be valid, and by such practice defeat the policy of Congress to protect the allottee from liability under any contract made before Congress deemed such allottee competent to transact his business and handle his property as other persons. Such contracts, although void, would constitute such a cloud upon an allottee's title as to render it, after the restrictions had been removed, unmarketable, without first obtaining a decree of court canceling such instruments. An opportunity was,

therefore, afforded designing persons to obtain such contracts, thereby clouding the title of the allottee and forcing him to sell his land, when it became alienable, to the owner of such illegal contracts or be to the expense of litigation to clear his title. But when any deed, procured in pursuance of such a contract, is struck down by the statute, all fruits of such contracts are destroyed, and there can be no inducement to obtain them. It was to accomplish this that this act was passed. It was not intended by the statute to disqualify any person who has expressed a wish or desire to purchase an allotment or any part thereof, before the removal of restrictions, from purchasing it after removal of restrictions. The statements of plaintiffs in this case to the allottee and her statements to them constituted neither a moral nor a legal obligation upon any of them to perform any act after the removal of restrictions. To hold that plaintiffs in this case were disqualified under the statute from purchasing the land from Virginia Jones, and that any deed they might procure from her after the removal of her restrictions would be void, because of their expression to her before the removal of restrictions of their willingness to buy afterwards, if a price could be agreed upon, would establish a rule that would render all titles from Indian allottees uncertain and dangerous, and would greatly impair, if not destroy, the value of their lands. Such a construction of the statute, instead of rendering it a source of protection to the Indians, would become an instrument of oppression. Such was not the intent of Congress.

It follows from the foregoing conclusions that the judgment of the trial court must be reversed and the cause remanded.

All the Justices concur.