## ROGERS v. NOEL *et al.*

No. 1987.   Opinion Filed June 25, 1912.

(124 Pac. 976.)

1.  **INDIANS—Lands—Conveyances.**   A deed conveying, or a contract for the sale of, a portion of a surplus allotment, made by a Choctaw Indian by blood before the removal of restrictions upon his power to alienate same, in violation of Act Cong. June 28, 1898 (c. 517, sec. 29, 30 U. S. St. at L. 507), and of Act Cong. July 1, 1902 (c. 1362, secs. 15, 16, 32 U. S. St. at L. 642, 643), is void.

2.  **SAME.**   The act of Congress, approved April 21, 1904 (c. 1402, 33 U. S. St. at L. p. 204), authorizing the removal of all restrictions upon the alienation of allotted lands of members of the Five Civilized Tribes by blood, except minors and except as to homesteads, upon approval of the Secretary of the Interior under such rules and regulations as he may prescribe, authorizes the Secretary of the Interior to provide by general rule that no order removing the restrictions of any such allottee shall become effective until 30 days after its date; and a deed executed by an allottee after the date of the approval of the order removing restrictions upon the power of the allottee to alienate, but before the expiration of 30 days from the date of such order and approval, is void, and not merely voidable.

3.  **SAME.**   Such deed being void when made confers no rights or title in the grantee against the heirs of the deceased grantor.

(Syllabus by Sharp, C.)

*Error from District Court, Haskell County;*
*Malcolm E. Rosser, Judge.*

Action by J. C. Rogers against Chaney Noel and others. Judgment for defendants, and plaintiff brings error.   Affirmed.

*Robins & Pyle,* for plaintiff in error.

*Frederick & King,* for defendants in error.

Opinion by SHARP, C.   It is first urged that the demurrer to the defendants' answer was improperly overruled because of a negative pregnant in said answer, wherein it is alleged: "Defendants further say that it is not true that plaintiff purchased said land from their father Ben Noel for the sum of $1,135."

It will not be necessary to consider this objection, for the reason that the answer elsewhere sufficiently puts in issue all of the material allegations in the plaintiff's petition, and therefore the demurrer, being general, was properly overruled.

The material facts in this case are very similar to those in *Simmons et al. v. Whittington,* 27 Okla. 356, 112 Pac. 1018, and involve the right of a Choctaw citizen by blood to sell his surplus allotment. The lands in question were allotted to Ben Noel, who, joined by his wife, Chaney Noel, by warranty deed dated July 14, 1906, attempted to convey said lands to the plaintiff in error. Prior to the date of said deed, the United States Indian agent at Muskogee had had under investigation the application of said Ben Noel for the removal of the restrictions upon the sale of his surplus allotment, and on May 16, 1906, made and reported to the Secretary of the Interior his findings and recommendations, which were favorable to the applicant. These recommendations were approved by the Secretary of the Interior, in writing, on June 16, 1906, in the following language:

"Department of Interior, Washington, D. C., Jun. 16, 1906, approved. This approval to be effective thirty days from date. Jesse E. Wilson, Assistant Secretary of the Interior."

It will thus be seen that the deed from Ben Noel and wife to plaintiff in error was made before the expiration of the thirty days fixed in the order of approval of the Secretary of the Interior. The exact question was before this court in *Simmons et al. v. Whittington, supra,* in which we held that a deed made by a Choctaw Indian by blood to a surplus allotment, before the removal of restrictions upon the allottee's power to alienate the same, was in violation of Act Cong. June 28, 1898, c. 517, sec. 29, 30 U. S. St. at L. p. 507, and Act Cong. July 1, 1902, c. 1362, secs. 15, 16, 32 U. S. St. at L. pp. 642, 643, and therefore void.

It is insisted, however, by counsel that the restrictions on the right to alienate were removed by the findings of the Indian agent, and that any conveyance made by the allottee after the date of such findings was voidable only in the event that the Secretary of the Interior failed or refused to approve the findings of the Indian agent, and that, the Secretary of the Interior having

approved the findings, the intermediate conveyance was thereby validated. We do not so construe the act under which applicant proceeded, being Act April 21, 1904, 33 St. at L. 204, which provides that:

"All restrictions upon the alienation by allottees of Indian blood of members of the Five Civilized Tribes, except minors and except as to homesteads, may with the approval of the Secretary of the Interior be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian agent at the union agency in charge of the Five Civilized Tribes, if said agent is satisfied upon a full investigation of each individual case that such removal of restrictions is for the best interest of said allottee. The findings of the United States Indian agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded."

As stated, the investigation was made and findings reported by the Indian agent. This was a necessary preliminary act and condition precedent to the jurisdiction of the Secretary of the Interior to approve or disapprove the findings of the Indian agent. Such findings, therefore, constituted but a step in the procedure necessary by which to attain the desired end. Of itself it accomplished nothing. It was only effectual when approved by the Secretary of the Interior, and until such time no authority in the premises was conferred or right obtained by the allottee. Until the Secretary acted favorably and put his approval in writing, and caused the same to be recorded, the restrictions continued absolute. Only in this manner did the allottee have the right to alienate, and, without this being done and until the expiration of the time fixed in the order of approval in which it might be done, any attempted conveyance was void. As was said in *Simmons et al. v. Whittington, supra:*

"If the deeds made before the removal of restrictions were only voidable, there might be some support for this contention, but they are absolutely void, because prohibited by the law. They bind no one. In legal effect they are nothing; and knowledge of their existence conveyed no notice of the rights of any one because no one can claim any rights under them."

Neither is there force in the argument that the Secretary of the Interior was without authority to fix a date in the future at

which the order of removal of restrictions might become effective. Referring again to *Simmons et al. v. Whittington, supra,* it was there said:

"The rule complained of falls within this grant of power, and the Secretary of the Interior in this case had power to prescribe by general rule that no order of removal should be effective until 30 days from the date of its approval by him. It was so provided in the case at bar both by general rule and by specific provision in the order of removal."

Counsel cite and rely upon *Pickering v. Lomax,* 145 U. S. 310, 12 Sup. Ct. 860, 36 L. Ed. 716, *Lykins v. McGrath,* 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485, and *Campbell v. Kansas Town Co.,* 69 Kan. 314, 76 Pac. 839, in support of the position that the order removing restrictions, when it became effective, would be retroactive in its effect, and relate back to the date of the conveyance as though authority to execute the deed had been previously given. In *Pickering v. Lomax et al., supra,* the President of the United States approved the deed thirteen years after its execution. It was there said, among other things:

"The object of the proviso was not to prevent the alienation of lands *in toto,* but to protect the Indian against the improvident disposition of his property, and it will be presumed that the President, before affixing his approval, satisfied himself that no fraud or imposition had been practiced upon the Indian when the deed was originally obtained. Indeed, the record in this case shows that the President did not affix his approval until affidavits had been presented, showing that Pickering was the owner, and that the amount paid to Robinson was the full value of the land, and that the sale was an advantageous one to him."

The decision in *Lykins et al. v. McGrath, supra,* is predicated upon the earlier opinion of the court in *Pickering v. Lomax, supra.* There the patent contained the following provision: "That said tracts shall never be sold or conveyed by the grantee or his heirs without the consent of the Secretary of the Interior for the time being." It was held that the consent of the Secretary of the Interior to a conveyance by one holding under a patent containing the above provision may give effect to the execution, and, when given, is retroactive in its effect, and relates back to the date of the conveyance. It was there shown by the order of

approval of the Secretary of the. Interior that the allottee had received full payment of a stipulated price which was ample, and had been subjected to no imposition or wrong in making the conveyance. The Kansas case was decided on authority of the above-mentioned opinions of the Supreme Court. There the deed, made by a Shawnee Indian, was not approved by the Secretary of the Interior until long after its execution. The effect of these decisions was to hold that the title of the allottee passed, subject only to the approval of the President or Secretary of the Interior, as the case may be, while with us such conveyances are void, not voidable. *Lewis et al. v. Clements,* 21 Okla. 167, 95 Pac. 769. In this case it was held that a contract for the sale of a surplus allotment, made by a Choctaw Indian in violation of Act Cong. June 28, 1898, c. 517, sec. 29, 30 St. at L. 507, and Act Cong. July 1, 1902, c. 1362, secs. 15, 16, 32 St. at L. 642, 643, before his restrictions upon the alienation of the same had been removed by the Secretary of the Interior, was void. In *Howard et al. v. Farrar,* 28 Okla. 490, 114 Pac. 695, speaking through Hayes, J., this court said:

"The sale by Rhoda Howard of her land constituting part of her allotment to Thompson was in violation of the law. Section 29, c. 517, of the Act of Congress June 28, 1898 (known as the 'Curtis Bill') 30 St. at L. p. 507, provides: 'That all contracts looking to the sale or incumbrance in any way of the land of an allottee, except the sale heretofore provided, shall be null and void.' And the agreement with the Choctaws and Chickasaws (32 St. at L. p. 642) provides: 'Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt or obligation of any character contracted prior to the time at which said land may be alienated under this act; nor shall said land be sold except as herein provided.'"

See, also, *Harris v. Hardridge et al.,* 7 Ind. T. 532, 104 S. W. 826; *Kelly et al. v. Harper,* 7 Ind. T. 541, 104 S. W. 829; *Sayer v. Brown,* 7 Ind. T. 675, 104 S. W. 877; *Goodrum et al. v. Buffalo,* 7 Ind. T. 711, 104 S. W. 942.

The deed being void when made, by force of the statute, the rule of law applicable to voidable conveyances can have no application.

The subsequent proceedings in the county court of Haskell county, in which a special administrator of the estate of Ben Noel, deceased, was appointed by said court, and in pursuance of which, said special administrator on May 1, 1909, executed a deed to the lands, theretofore intended to be conveyed by the deceased to plaintiff in error, according to his allegations, not being referred to in counsel's brief, are not considered.

The judgment of the trial court, for the reasons stated, should, therefore, be affirmed.

By the Court:   It is so ordered.