F. B. COLLINS INV. CO., OF CLINTON, *et al.* v. BEARD.

No. 3938.    Opinion Filed May 11, 1915.

(149 Pac. 846.)

1.    CANCELLATION OF INSTRUMENTS—Petitions—Offer to Restore Consideration—Excuse for Failure—Indian Allotments. In a suit in equity by a Choctaw Indian allottee, upon attaining his majority, to cancel certain mortgages and a deed to his allotted lands, executed by him while a minor, a petition which avers, relative to the money received for such conveyances, that "he has squandered the money in high and riotous living, and that he is not now possessed of any of same, or other property, save and except the land involved," sufficiently excuses a failure to offer to restore the consideration so received.

2.    ESTOPPEL—Indians—Conveyance of Allotment—Cancellation—Condition Precedent. Representations by a minor Indian allottee that he is of lawful age and competent to convey, either written or oral made at the time of the execution of a deed to his allotted lands, which is void, because in contravention of the restrictive legislation of Congress regarding the alienation of such allot-

ment, will not estop such allottee from the assertion of the invalidity of such deed in a court of equity, nor require, as a condition precedent therein, a restoration of, or offer to restore, the consideration so received, where it appears that the money was squandered and dissipated during minority without permanently bettering his estate.

3. INDIANS—Allotments of Minors—Restrictions on Alienation—What Law Governs. Sections 5036, 5037, Comp. Laws 1909 (sections 884, 885, Rev. Laws, 1910), which provide in substance, when considered together, that a minor over the age of 18 years has a limited right to contract relative to his lands, subject to his disaffirmance upon coming of age, on the condition that he restore the condition he has received, are not applicable to a case of a minor Indian in the sale of his allotted lands contrary to the restrictions imposed by Congress upon their alienation. The state statutes (sections 4427, 4428, 4429, 4430, Rev. Laws 1910), authorizing the state courts to confer upon minors the power to contract in reference to their lands, are inoperative and ineffectual as to Indian minors, regarding their restricted allotments.

(a) When the question of restriction on the alienation of lands allotted to members of the Five Civilized Tribes, or the right of power of alienation is involved, resort must be had to the acts of Congress relating to these matters, and to those laws alone.

(b) If a state statute, in terms, or by proper construction, would permit the alienation of a restricted Indian allotment, or render a deed thereto effective, where the allotment would not be alienable, or the deed thereto effective, under the acts of Congress dealing with the subject-matter, then the state law fails and is inoperative in such cases.

(Syllabus by Brewer, C.)

*Error from District Court, Garvin County;*

*R. McMillan, Judge.*

Suit by Eric C. Beard against the F. B. Collins Investment Company, of Clinton, Okla., a corporation, and others. Judgment for plaintiff, and defendants brings error. Affirmed.

*Ledbetter, Stuart & Bell* and *Mont F. Highley,* for plaintiffs in error.

*J. B. Thompson,* for defendant in error.

BREWER, C.   This suit was brought by Eric C. Beard, the defendant in error, as plaintiff below, for the cancellation of two mortgages, and a deed conveying 280 acres of land situated in Garvin county, on the ground that when the said instruments were executed, plaintiff, a Choctaw Indian of one-quarter blood, was a minor.   The lands involved are described as follows:

"The S. E. ¼ of section 9, and the S. ½ of the N. W. ¼ and the S. W. ¼ of section 10, all in township 3 north, range 2 east of the Indian base and meridian, containing 280 acres," etc.

Plaintiff alleges that both mortgages were executed on the 9th day of October, 1908; that plaintiff was then a minor and did not arrive at his majority until in October, 1909,   That on the 19th day of December, 1908, plaintiff executed a warranty deed to F. B. Collins, conveying all of said lands, except the S. E. ¼ of the S. E. ¼ of section 9, township 3, range 2 E.   Plaintiff further alleges that the Investment Company assigned the said mortgage on the 31st day of December, 1908, to Henry Block; said assignment being placed of record January 7th, 1909.   He further alleges:

"That the lands and premises hereinafter described and from which it is sought to remove as a cloud upon plaintiff's title certain mortgages and deed heretofore executed by plaintiff * * * are located in said county and state; that each, every, and all of said mortgages, deeds, and assignments so made and executed and recorded as aforesaid, were made, executed, and recorded during the minority of this plaintiff and before he had reached the age of 21 years and while he was so incapable of making and executing said mortgages and deeds, and that the same are therefore of no effect and validity, but are void as against this plaintiff."

The petition further alleges as an excuse, or at least a reason, for not restoring or offering to restore, the moneys received by him on account of said instruments, the following:

"That of the consideration expressed in said mortgages and deed, the plaintiff only received a part, and that part was in

money, and that he immediately spent and dissipated the same in high and riotious living, and that at this time he has no part of the consideration received by him as expressed in said mortgages and deed. That he is, therefore, unable to return said consideration or any part thereof. That he has no other property whatever, except the lands and premises hereinbefore described. That while said mortgages and deed are void and of no force and effect by reason of the facts hereinbefore alleged and set forth, still the same, by reason of being of record as aforesaid, cast a cloud upon the title of this plaintiff in and to the said lands and premises.

On June 3, 1911, the parties filed the following pleadings: The defendants demurred to the petition and filed separate answers. The plaintiff filed demurrers to the separate answers, and both parties reduced to writing, signed, and filed an agreed statement of facts. The record shows conclusively that the court had all these matters before it on June 3, 1911, for all of them— the demurrer to the petition and the demurrers to the answers, and a decision on the agreed statement of facts—were disposed of in a general decree, entered on said date; all the rulings being shown in one journal entry.

The demurrer to the petition was as follows:

"Come now the defendants and for demurrer to plaintiff's petition herein, say that said petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against these defendants, for the reason that no fraud is charged on the part of the defendants or either of them in the several transactions detailed, and it is shown by said petition that the plaintiff knowingly received and accepted the benefits of the conveyances recited, and further that said petition shows that the plaintiff was over the age of 18 years when said contracts were made and entered into by him, and he has not restored, nor does he offer to restore, the consideration to the party from whom it was received, or pay or offer to pay its equivalent with interest; and of this the defendants ask judgment of the court that they be dismissed with their costs.

The answer of the Investment Company and F. B. Collins

substantially alleged that the plaintiff was over the age of 18 years when he executed the various conveyances, and has not restored the consideration, or paid its equivalent to defendants, or offered so to do; and further, that the plaintiff, in making the application for the loan in October, 1908, represented himself to be 21 years of age, and the owner of the lands involved; that he was competent and legally qualified to mortgage same; that he had arrived at the years of discretion and appeared to be of the full age of 21 years and fully competent to transact business, and that the defendants believed him to be of full age; that thereafter, in December, 1908, plaintiff returned, wanting more money, and again represented himself to be legally competent to sell his lands, and that defendants, believing such representations, purchased a portion of the lands, taking the deed therefor involved in this case; and that they would not have done so, had they not believed · such representations to be true. The answer further alleges that the plaintiff purposely and designedly made such representations as to his competency, with the intent to deceive defendants, and did thereby deceive them. Defendants then prayed that plaintiff take nothing under his said petition, and that the title to the lands be quieted in defendant Collins, for judgment for costs, and other proper relief.

The answer of defendant Henry Block, as trustee, adopted the answer of his codefendants, and then alleged that he purchased the note from the Investment Company prior to maturity, for value, without knowledge that the representations plaintiff had made to the investment company regarding his age were false, but believed them to be true, and that the purchase of the note would not have been made, except for such representations; and further, that plaintiff issued said promissory note secured by said mortgage as commercial paper, and thereby designedly induced this defendant to purchase said paper.

Plaintiff's demurrer was general and went to the whole of the answer, except the general denial.

The agreed statement of facts shows the following facts:   (1) That Erie C. Beard is a Choctaw Indian by blood, duly enrolled as such under Choctaw Roll No. 6638.   (2)  ·That Beard was a minor in fact, and as shown by the "enrollment records" at the time of the execution of the mortgages and deed sought to be canceled, and was more than 18 years old.   (2)   That 160 acres of the land covered by said instrument (the S. W. ¼ of section 10, township 3 N., range 2 E.) was the homestead allotment of said Beard; that the other lands involved were allotted to him as surplus allotment.   (4)   That while a minor, and prior to the execution of the mortgages and deed, plaintiff Beard, upon the petition of his mother as next friend, procured an order of the state court conferring upon him "majority rights," with full power "to make contracts concerning his allotment of lands," without regard to his minority; this proceeding being authorized by a state statute.

The points urged here for a reversal of this case are:  ' (1) Error in overruling the demurrer to the petition;  (2) error in sustaining the demurrers to the answers.

Before entering upon a discussion of either of these points, we will observe that all the material facts of this controversy are before us.   It is presented here, essentially, as an agreed case, and a proper application of the law to the facts, which are not in dispute, will finally dispose of the entire controversy.   It would be a vain and useless thing to return these parties to the trial court to state in the pleadings an admitted fact, and thus necessitate another weary journey through the crowded courts of the state and on to that higher court, whose judgment alone will be the final word.   While the petition assailed omits, doubtless by oversight, to aver that the lands involved are allotted lands, it is agreed by all parties that they are lands allotted to this Indian minor.   Therefore, on this point we shall treat the petition as amended, to show this fact.   Likewise, the answer fails to aver the action of the state court in conferring majority rights, under

a state statute, upon this minor, authorizing him "to make contracts concerning his allotted lands" prior to the execution of the conveyance assailed. But we shall treat the answers as amended, to show this fact as a defense, if defense it is found to be. Treating the pleadings as so amended, we will discuss the points in the order in which they are stated above.

1. The demurrer to the petition, it will be observed, is special in its nature, and only challenges, and evidently only intended to challenge, the sufficiency of the petition, relative to the restoration, or offer of restoration of the consideration confessedly received on account of the mortgages and deed attacked. To state it, perhaps in simpler language, the demurrer amounts to the contention that the petition is fatally defective, because it admits that the plaintiff was over the age of 18 years at the time he executed the papers, and that he received certain moneys and has failed to return or eender a return of same. So, the bald question arises: Was the restoration of the consideration by this Indian minor necessary to be alleged to give him standing in court? Plaintiffs in error affirm that this was necessary, and that without it, the petition is insufficient. Defendant in error claims the converse of this proposition, and that the reasons given in the petition are sufficient to excuse him from a restoration of the consideration received, or an offer so to do. Defendant in error is correct in this view.

By referring back to the demurrer under consideration, it will be noted that it involves no question of the conduct of the allottee, such as representing himself to be of full age, and fraudulently inducing defendants to so believe. This phase of the case is presented in the answer, and will be treated in discussing its sufficiency. We have to deal here only with the sufficiency of plaintiff's allegation; that is to say, as to the sufficiency of the allegation that *he has squandered the money in high and riotous living, and that he is not now possessed of any of same, or other property, save and except the land involved.* On this precise

point, this court has, we take it, finally spoken. In the case of *Coody v. Coody et al.,* 39 Okla. 719, 136 Pac. 754, the fifth subdivision of the syllabi disposes of the matter in the following language: ·

"In a suit in equity brought by a Cherokee Indian, immediately upon attaining his majority, to cancel certain leases and a mortgage given by him during minority on his allotted lands, a petition which charged that all of the money paid him on account thereof during his minority had been spent and squandered prior to attaining his majority sufficiently excluded the failure of an offer to return the consideration received."

The above holding was the logical result of, and indeed made necessary, by reason of the treaties and acts of Congress under which these Indian allotments were taken, and the decisions of this court and of the federal courts, in dealing with and in construing these laws.

In *Heckman v. United States,* 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 833, it is said:

"It is said that the allottees have received the consideration and should be made parties in order that equitable restoration may be enforced. Where, however, conveyance has been made in violation of the restrictions, it is plain that the return of the consideration cannot be regarded as an essential prerequisite to a decree of cancellation. Otherwise, if the Indian grantor had squandered the money, he would lose the land which Congress intended he should hold, and the very incompetence and thriftlessness which were the occasion of the measures for his protection would render them of no avail. The effectiveness of the acts of Congress is not thus to be destroyed. The restrictions were set forth in public laws, and were matters of general knowledge. Those who dealt with the Indians contrary to these provisions are not entitled to insist that they should keep the land if the purchase price is not repaid, and thus frustrate the policy of the statute. *United States v. Trinidad Coal & Coking Co.,* 137 U. S. 160, 170, 171, 11 Sup. Ct. 57, 34 L. Ed. 640, 644."

Other decisions will be noted in the discussion to follow regarding the sufficiency of the averments of the answer. Suffice

it to say, we consider it to be now well settled, that where an Indian executes a void deed which attempts to convey restricted lands received by him as his allotment, and receives money therefor, and thereafter wastes and squanders the money received for such attempted conveyance, without having improved or bettered his estate therewith, and later brings his suit to cancel such void conveyance, the law does not require that before so doing, he restore the moneys he has so received; and the law not requiring this of him, under such circumstances it follows that he is not required to plead or prove that he has or will do so. Before passing from the question under discussion as to the demurrer to plaintiff's petition, it is necessary to notice briefly the further contention, urged in the brief for the first time, that the petition in question is insufficient, because lacking in proper averments of ownership of the land in plaintiff. This objection, it seems to us, comes too late. No such objection was made below, or called to the attention of the court in any way; and while it is true that if there was a total want of an averment of this nature, it might be possible to raise it for the first time here, yet such is not this case. Taking the allegations of the petition as a whole, any ordinary person, upon reading them, would have no doubt but that plaintiff was asserting ownership in the land from which he was attempting to remove clouds occasioned by the conveyances in question. Had this point been raised below, it would probably have been sustained, with leave to amend. The petition alleges that the purpose of the suit is "to remove [conveyances] as a cloud upon plaintiff's title," and further says, referring to plaintiff, "that he has no other property whatever, except lands and premises hereinbefore described." These allegations, while neither formal nor specific, impress us very strongly with the fact that the petition asserts ownership in the plaintiff; and in the absence of any attack in the trial court by demurrer, motion, or otherwise, and of even any challenge here as to the actual fact of plaintiff's ownership,

except because of the conveyances involved, we shall hold the averments sufficient.

2. Passing to the final and most difficult proposition in the case, we find it not so easy of solution. It will be noticed that the answer goes further than the demurrer just disposed of. While it is true it raises the question disposed of in the demurrer, it further avers that plaintiff made specific representations that he was of full age at the time of the conveyances; that he looked to be of full age, and that because of his representations, coupled with his appearances, the defendants believed him to be as he represented himself, and that he was fully competent to convey his lands. They allege that he made these representations falsely and fraudulently, for the purpose of obtaining the consideration which he did obtain for the conveyances. These allegations of the answer, which have been only substantially stated, would, ordinarily, be sufficient to require the application of the doctrine of estoppel. So, we are brought face to face with the question: Can an equitable estoppel be asserted against an Indian allottee to prevent his assertion of the invalidity of a void conveyance of his restricted lands?

Plaintiff in error contends that the facts pleaded in the answer, which the demurrer thereto admits, deprive plaintiff below of any standing in a court of equity. They support this contention by the case of *International Land Co. v. Marshal*, 22 Okla. 693, 98 Pac. 951, 19 L. R. A. (N. S.) 1056, and it may be just as well to say at the outset, that if the doctrine of the Marshal Case is to be adhered to in strictness, that the point is well taken. Plaintiff in error relies further upon sections 5036, and 5037, Comp. Laws 1909 (sections 884, 885, Rev. Laws 1910), which statutes, it is claimed, provide, when considered together, that a minor over the age of 18 years has a limited right to contract relative to his lands subject to his disaffirmance upon coming of age, but upon the condition that he restore the consideration which he has received and further that, under sections 4955a, 4956, 4957 and 4958, Comp. Laws 1909 (sections 4427, 4428,

4429, 4430, Rev. Laws 1910) under which a decree of the state court was entered, conferring upon this minor full power "to make contracts concerning his allotment." We will dispose of these last-mentioned contentions before proceeding to a discussion of what we consider, by far, the most important point in the case.

The statutes above referred to need no analysis, or even a construction here, for the reason that when the question of the removal of restrictions from allotted lands, or the right of alienation of such lands, or the power of alienation is involved, we must look to the acts of Congress and to those acts and laws alone. In other words, if a state law, by its language or through its proper construction or its operation would permit the alienation of a restricted Indian allotment, or render a deed thereto effective, where the land would not be alienable, or the deed thereto effective, under the acts of Congress dealing with the subject-matter, then the state laws fail; and this, because the federal government retained jurisdiction in these Indian matters to the extent stated in the Enabling Act, under the terms of which Oklahoma became a state; and this reservation of jurisdiction was assented to in the Constitution which the people adopted. To give the desired construction to either of the statutes under consideration would be, in effect, to accomplish the removal of the federal restrictions on the sale of allotted lands, by means of state legislation. Once conceding this principle, it is easily seen that the federal control would be interfered with and might ultimately be entirely suspended. No such construction is possible. *Chapman v. Siler,* 30 Okla. 714, 120 Pac. 608; *Walker v. Brown,* 141 Pac. 681; *In re Probate of Will of Emerson Allen,* 44 Okla. 392, 144 Pac. 1055; section 1, Enabling Act (running section 413, Williams' Ann. Const.; section 43, art. 24, Constitution); *Truskett v. Closser,* 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. —.

Coming now to a consideration of the case of *International Land Company v. Marshal, supra,* where the learned justice, who

wrote the opinion, has made an extensive study of the cases, both English and American, dating from a very early period, we find that the deduction the writer gathers from his study of the cases is expressed as follows:

"If an infant has fraudulently represented that he is of full age, or actively and purposely conceals his minority, whereby the other party is induced to enter into a contract, then it is held that the infant will be estopped in equity by his fraud from avoiding the contract on the ground of infancy to the prejudice of the other contracting party."

In that case, after the above declaration, it is said:

"The following propositions are raised in this record: (1) Whether or not the plaintiff is entitled to any relief, without paying back to the defendant the $125 received by him on December 26, 1905, at the time the deed was made and delivered to the defendant. (2) Whether or not the plaintiff is entitled to any relief in this case without paying back to the defendant the $250 received by him on December 28 or 29, 1905, and credited as a part payment on the consideration for said land. It is settled by the great weight of authority that equity will regard the circumstances surrounding the transaction—the appearance of the minor; his intelligence; the character of his representations; the advantage he has gained by the fraudulent representations; and the disadvantage to which the person deceived has been put by them in determining whether he shall be permitted to invoke successfully the plea of infancy. That an infant must restore the property which he obtains on a contract where he has been guilty of deceit or fraud before he can avoid it is the universal rule in equity."

To sustain the above statement numerous cases are cited. And the majority of the court there held, as shown in the head-notes of the case, as follows:

"Where a party fraudulently represents that he is over 21 years of age, when in fact he is only 19 years of age, and such false and fraudulent representations, in connection with his appearance and size, being believed, by means of a deed then and there executed and delivered by him he on account of such fraudulent representations obtains the sum of $125 as a part of the

Form No. 11

consideration therefor, such party grantor whilst in possession of the land described in such deed will not be permitted to invoke the aid of equity to have such deed canceled, although it may be absolutely void, without offering to refund the amount of money so fraudulently obtained.

It is apparent at once that the rule announced above, if it be conceded that it still obtains in this court, in this class of cases covers the instant case like a blanket; but that the rule thus announced still obtains, if attempted to be applied to void conveyances of restricted Indian allotments, we are unwilling to concede. If we were dealing with the ordinary question of the disability of infancy, we would not hesitate to apply the doctrine of the Marshal Case; but in such a case as this, we are not willing to apply it, for the reason that it is believed that we have no power to do so under the plain provisions of the acts of Congress upon which the right to alienate the land depends. What we mean is this: The doctrine of the Marshal Case was declared in a suit by a Creek freedman to cancel deeds to his allotment made during his minority, and yet section 16 of the act to ratify and confirm a supplemental agreement with the Creek Indians, approved June 30, 1902 (chapter 1323, 32 U. S. Stat. 500), after providing against the alienation of such allotments, specifically provides:

"Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

And yet, notwithstanding the very strong language of the act, in terms preventing the application of the doctrine of estoppel in the establishment of the invalidity of such a deed, we think the effect of the rule announced is to apply the doctrine, at least as to the remedy. In fact, it has been adjudged that this was the effect of the Marshal Case, in a later opinion by this court, in which all the justices concur, for in *Bleakmore v. Johnson,* 24 Okla. 552, 103 Pac. 554, it is said in discussing the Marshal Case:

"The court, however, in that case did apply the doctrine of estoppel as to remedy to the extent that it held that plaintiff had, by his acts, precluded himself from the right to come into a court of equity and invoke its aid to have canceled the conveyance that he, by his fraudulent acts, had induced the defendant to accept and pay a valuable consideration therefor, without restoring to the defendant the consideration he had received."

And continuing, the court said, referring to the Marshal Case:

"The contrary doctrine has been specifically held by the United States Circuit Court of Appeals for the Eighth Circuit in *Colbert v. Alfrey et al.*, 168 Fed. 231, 93 C. C. A. 517, wherein the facts were very similar to the facts in International Land Company v. Marshal. But the issue presented by the pleadings and evidence in those cases upon this question is not presented by the pleadings in this case, and we are therefore not called upon to determine whether we shall adhere to the rule in the Marshal Case."

In the Bleakmore Case, just quoted from, it was urged in this court that the plaintiff was estopped because of representations as to her age; but the court did not pass upon the question, as has been seen, for the reason that the estoppel was not specifically pleaded in the lower court, but did arrive at and announce the conclusion, as shown by subdivision four of the syllabi, that:

"A minor Creek freedman, on attaining her majority, may maintain an action in equity to cancel, set aside and remove as a cloud upon her title a void deed executed by her during her minority without offering to restore the consideration, where such consideration never reached her hands, or was immediately paid over to one with whom she was illegally cohabiting, and was never returned to her, and was not in her possession when she attained her majority."

The case of *Alfrey v. Corbet,* which was decided finally by the United States Circuit Court of Appeals for the Eighth Circuit, 168 Fed. 231, 93 C. C. A. 517, after the decision in the Marshal Case, appears to us to be a case with facts substantially

the same as those found in the Marshal Case; and in that case it was said in an opinion by Circuit Judge Hook:

"As to the part of the decree requiring complainant to refund the consideration paid for the deeds: There was no showing that when the suit was brought, or when complainant became of age, he still had any of the money paid him, or any property that had been acquired with it, or that any part of it had been devoted to the improvement of his land. Such proof as there was tended to show the money was quickly squandered after he got it, and the effect of the decree in its present form would be to diminish the estate he possessed during minority. To hold a minor to the restoration of what he received, but has dissipated, is to go counter to the very reasons upon which his incapacity to contract is founded. The Court of Appeals in the territory sustained the decree in this particular because it appeared complainant orally represented he was of age when he made the sale; but such representation does not differ in its effect from that which is implied from the act of conveyance. 'A conveyance by an infant is an assertion of his right to convey. A contemporaneous declaration of his right or of his age adds nothing to what is implied in his deed. An assertion of an estoppel against him is but a claim that he has assented or contracted. But he can no more do that effectively than he can make the contract alleged to be confirmed.' *Sims v. Everhardt,* 102 U. S. 300, 313, 26 L. Ed. 87. If a contract made by a minor be disaffirmed, he will be required to restore such of the consideration as remains in his hands; but repayment of the consideration will not be required, where it has been wasted, disposed of, or consumed during minority. *MacGreal v. Taylor,* 167 U. S. 688, 698, 17 Sup. Ct. 961, 42 L. Ed. 326. It follows, therefore, the court erred in this particular, and in dividing the costs between the parties. The decree is modified by excluding therefrom the provision that complainant repay the moneys he received, with interest, and also by awarding him recovery of costs."

The writer of this opinion cannot assent fully to the statement in the above quotation that, ordinarily, a solemn representation by a man that he is of full age, would not be other or different, or of greater inducing effect than his mere passive execution of a deed; but still, we believe that under the acts of Congress relative to the alienation of restricted lands, an estoppel

cannot be asserted to prevent the cancellation of a deed, absolutely void under the acts and made contrary to their provisions.

That an Indian allottee, when seeking to cancel a deed which is void, because made contrary to the acts of Congress imposing restrictions on the land, is neither required in law or equity to restore the consideration he has received for such deed, where it is shown that he has squandered and dissipated the same and has none of it in his possession at the time of suit, has been held in the following cases and perhaps others in this court: *Stevens v. Elliott,* 30 Okla. 41, 118 Pac. 407; *Gill v. Haggerty,* 32 Okla. 407, 122 Pac. 641; *Tirey v. Darneal,* 37 Okla. 606-611, 132 Pac. 1087. In most, if not all, of the cases in this court which we have mentioned, and in many other records brought to our notice, it will appear that the claim is made that the allottee represented himself to be of full age, and generally this representation is shown to have been in the form of a solemn affidavit to that effect. But for one reason or another, in disposing of the cases, it was found unnecessary to bring directly under review the rule announced in the Marshal Case, which we have been discussing; but a careful reading of all of these cases, with a consideration of the reasoning upon which they proceed, leads inevitably, we think, to the conclusion that this court, since the decision in the *Alfrey-Colbert Case, supra,* in the federal court, has had no intention of adhering to the rule of the Marshal Case, To do so, very often, if not in a majority of the cases, would prevent an Indian minor from asserting the invalidity of his void conveyances. The custom of taking affidavits as to age, when there could be a possible question about it, has been so generally resorted to, as shown by the appeals in this court, and as is so well known to its judges and the bar generally, that the fact thereof has become one almost, if not quite, of general knowledge. The treaties and acts of Congress, when dealing either generally with all the tribes, or specially with a particular tribe, have used the strongest language possible to prevent the alienation of restricted lands. As has been seen,

the Creek Treaty, after declaring such conveyances to be absolutely void, goes on to affirm that such deed shall not be even susceptible of ratification in any manner; and to make sure that no right can ever be predicated upon, or grow out of a deed made in contravention of the act, it provides:

*"And no rule of estoppel shall ever prevent the assertion of its invalidity."*

Most of the treaty provisions with the different tribes contain language of similar import, but it may be said that the acts or treaties, affecting the Choctaws and Chickasaws, are not so strong in their language as are the acts affecting the other tribes. And while this is true, it is also true that in the Atoka Agreement (30 U. S. Stat. at L. 495) it is clearly and emphatically declared that deeds, leases, etc., made contrary to the provisions therein contained, are and shall be void; and in referring to deeds and leases, it is said:

*"And the purchaser or lessee shall acquire no rights whatever by an entry or holding thereunder."*

And in the Supplemental Agreement with the Choctaws and Chickasaws (32 U. S. Stat. at L. 642) it is provided:

"Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided."

It may be added that in getting at the intention and policy of Congress in dealing with the restrictions on the alienation of Choctaw and Chickasaw allotments, we can look to contemporaneous and subsequent legislation by that body dealing with the same questions, as affecting the other tribes; for all this restrictive legislation had the one fixed and permanent policy running through it, which was to safeguard and protect these Indians against their own improvidence. *In re Davis' Estate,* 32 Okla.

209, 122 Pac. 547; *Tiger v. Western Inv. Co. et al.,* 221 U. S. 286, 55 L. Ed. 738.

It has been fully established that conveyances of Choctaw and Chickasaw allotments, made contrary to the laws applicable thereto, are absolutely void. *Simmons v. Whittington,* 27 Okla. 356, 112 Pac. 1018; *Rogers v. Noel,* 34 Okla. 238, 124 Pac. 976.

So, to sum up the question, upon which the writer feels that perhaps he has already said too much that is not strictly relevant, but which was, in a general way, to support the view taken, it is our conclusion that the mere representations by an Indian allottee, either oral or otherwise, at the time of the execution of a deed, void because in contravention of the restrictive legislation of Congress, will not estop such allottee from the assertion of the invalidity of such deed in a court of equity.

Since preparing what has gone before, it has occurred to us that we might have disposed of this question upon another ground. The mortgages and deed in this case were taken in October and December, 1908, at a time when the Act of May 27, 1908, was controlling, and under which act the enrollment records are made conclusive evidence as to age; that is to say, the power of alienation in such cases depends upon whether or not those records show the allottee to be of 21 years of age in case of male, or 18, in case of females. It is conceded here by the pleadings, we take it, that the allottee in this case was a minor, testing his age by the enrollment records, when each of the instruments involved were executed; and without resting this case upon it, it is very probably true that these parties had no right to believe and cannot complain, if they did believe, representations made in direct conflict with the enrollment records, which, under the law in force, were to furnish the sole and conclusive test in the matter. The assignee, Block, occupies no better position than the others. He, too, knew of the question as to the age of the allottee, and as to his representations concerning same, and pleads a reliance thereon to protect him; and this is not to

indicate that without the knowledge he admits having, that he would still be in any better position, when claiming under deeds absolutely void from the beginning. This leads us to recommend that the case be in all things affirmed.

It is ordered that the opinion filed in this cause on December 22, 1915, be withdrawn, and that this opinion be filed as the opinion of the court; that petition for rehearing be and same is hereby denied.

By the Court: It is· so ordered.