## SCOTT v. MORRIS NAT. BANK.

No. 15894—Opinion Filed April 21, 1925.

**1. Seals — Statutes — Arkansas Statute Requiring Seals to Instruments not Adopted in Indian Territory.**

The statutes of Arkansas, extended and put in force in the Indian Territory. were only such laws of the state of Arkansas as were in force in that state at the close of the General Assembly of Arkansas in 1883. The statute of Arkansas requiring instruments to be under seal was not in force in the state of Arkansas after the adoption of the Constitution of that state of 1874, which abolished the distinction between sealed and unsealed instruments.

**2. Indians—Alienation of Lands for Town Sites—Statute.**

Under the Act of Congress of March 3, 1903, 32 Stat. L. 996, authority was granted for the survey and platting, at their own expense, of town sites along the lines of railroads, and for the unrestricted alienation of lands for such purposes, when recommended by the Commission to the Five Civilized Tribes,. and approved by the Secretary of the Interior.

**3. Same—Construction of Statute.**

The words "private parties," contained in the Act of Congress of March 3, 1903, 32 Stat. L. 996, do not apply exclusively to Indian allottees or their heirs.

**4. Indians—Lands — Purpose of Protective Statutes—State Claim.**

Statutes of the United States, providing for allotment of Indian lands and patents with restrictions upon alienation, were enacted to protect Indians from schemes and fraudulent practices of white men, not to aid in the unconscionable and inequitable enforcement of stale claims, to the injury of innocent parties, who, in good faith, for value, and by regular procedure, have purchased allotted Indian lands through the Interior Department of the United States.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by James Scott against the Morris National Bank. From judgment in favor of defendant, plaintiff brings error. Affirmed.

Lewis C. Lawson and R. C. Allen, for plaintiff in error.

Wm. M. Matthews and Charles A. Dickson, for defendant in error.

Opinion by PINKHAM, C. This was a suit instituted by the plaintiff in error, James Scott, as plaintiff, against the Morris National Bank of Morris, defendant in error, as defendant, to recover a certain tract of land situated in the town of Morris, Okla.

The following facts appear in the petition of the plaintiff, exhibits attached thereto, and the findings of fact of the trial court.

The lots in the city of Morris involved in the suit constitute a part of the surplus allotment of one Phillip Scott, a full-blood Creek Indian.

In October, 1903, the said Phillip Scott was confined in the federal penitentiary at Leavenworth, Kan. At that time he executed a power of attorney to one S. J. Checote. Acting under this power of attorney, Checote

applied to the Dawes Commission, known as the Commission to the Five Civilized Tribes, to procure the removal of the restrictions from the surplus portion of the allotment of the said Phillip Scott for town-site purposes.

It appears from the finding of facts that the said Commission made a full and complete investigation of the said application, took testimony thereon, and made its recommendation to the Secretary of the Interior, recommending the removal of the restrictions in order to create the town site of Morris; that during the hearing of the application for removal of the restrictions, a plat of the proposed town site was filed, as shown by the records introduced in the case.

Attached to plaintiff's petition is the order of the Secretary of the Interior, which shows that the Commission made this recommendation to the Secretary of the Interior December 6, 1903; that on February 25, 1904, the Department directed the Commission to take further proceedings in the matter.

On April 18, 1904, the Commission, having had another hearing, recommended to the Secretary that the restrictions be removed from 80 acres, the same being "the north half of the northeast quarter of section 18, at not less than $25 per acre."

On May 6, 1904, the acting Commissioner of Indian Affairs concurred in the recommendation of the Dawes Commission, and on May 12, 1904, the Secretary of the Interior wrote the Commission as follows:

"The Department also concurring, the application be allowed to alienate the said north half of the northeast quarter of section 18, township 13 N., range 14 E., at no less than $25 per acre, is hereby granted.

"This removal of the restrictions will not obligate the allottee to sell to any specific person."

Pursuant to the above removal of restrictions by the Secretary of the Interior, Phillip Scott, by S. J. Checote, attorney in fact, made a warranty deed of this 80 acres to T. F. Randolph.

Annexed to the deed is the following certificate:

"I, Tams Bixby, Chairman of the Commission of the Five Civilized Tribes, hereby certify that on the 26th day of May, 1904, at the office of the Commission at Muskogee, Indian Territory, there was paid to S. J. Checote, agent of Phillip Scott, duly authorized by power of attorney, in my presence, the sum of $2,840, as full payment in consideration of the north half of the northeast quarter of section 18, township 13 N., range 14 E. I further certify that the foregoing transfer and alienation was made by authority of the Secretary of the Interior dated May 12, 1904, under provision of the Act of March 3, 1903, 32 Stat. L. 996.

"Tams Bixby,
"Chairman."

It is said, in the court's second finding of fact:

"After Phillip Scott was discharged from the penitentiary he went before the Dawes Commission, testified under oath that he had authorized Checote, as his attorney in fact, to apply to have the restrictions removed from this land and to make a deed for that purpose; that he received the full purchase price paid for said land; that he was satisfied with the consideration, and that he approved and ratified all that had been done by his agent, Checote, by the Commission, and by the Department."

It further appears that Phillip Scott died, as shown by the petition, in 1905, leaving the plaintiff, his brother, as his only heir.

The court further found that after the said Phillip Scott was discharged from the penitentiary, neither he nor the plaintiff ever made any claim or assertion of title to the property in controversy until this plaintiff brought an action in the federal court of the Eastern District of Oklahoma, about four years prior to the institution of this suit, which suit was dismissed without prejudice to the right of plaintiff to sue in the state courts.

In its fourth finding of fact, the court found that the city of Morris had grown to a place of about 2,000 inhabitants, that valuable improvements amounting to hundreds of thousands of dollars had been made on this 80 acres since the restrictions had been removed, and that during the time the town has been building the plaintiff lived in the immediate neighborhood of Morris, saw this development and growth, and made no objection thereto until he instituted this suit.

At the close of the trial the court concluded, as a matter of law, that plaintiff's petition should be dismissed, and further adjudged and decreed that the title of the defendant to the lots in controversy be quieted and confirmed in the defendant, the Morris National Bank, as against the plaintiff, James Scott, and all persons claiming by, through, or under him.

Motion for new trial was overruled, exceptions reserved, and the cause comes regularly on appeal to this court by the plaintiff.

For reversal of this judgment, plaintiff in error submits and discusses a number of propositions, all of which are to the effect that in view of the facts found by the court, which facts are not challenged by plaintiff in error, that because of errors of law arising upon the facts, the judgment should be set aside and that a decision should be rendered by this court in favor of the plaintiff and against the defendant for the lands in controversy, with the right to recover the rents and profits arising from the said lands.

The first assignment of error relates to the holding of the trial court that the power of attorney in fact to S. J. Checote was legal and valid and empowered said Checote thereunder to apply to the Dawes Commission and to the Secretary of the Interior for the removal of restrictions on the 80 acres of land described in such proceedings.

The contention here is that the power of attorney is void because it does not bear the private or scroll seal of the grantor.

As we understand the argument of plaintiff, it is not contended that the instrument in question was not properly acknowledged nor that the notary's seal was not attached. In other words, it is contended that Congress extended and put in force in Indian Territory a statute of Arkansas which had been obsolete and abrogated in that state for more than 25 years (Schedule 1, Constitution 1874).

Section 31, Act of Congress, 1890, as contained in Carter's Indian Territory Statutes, is in part as follows:

"That certain general laws of the state of Arkansas in force at the close of the session of the General Assembly of that state, 1883, as published in 1884, in the volume known as Mansfield's Digest of the Statutes of Arkansas, which are not locally inapplicable or in conflict with this Act or with any law of Congress, relating to the subjects specifically mentioned in this section are hereby extended over and put in force in the Indian Territory until Congress shall otherwise provide."

In other words, the statutes of Arkansas extended by Congress over the Indian Territory were only such laws of the state of Arkansas as were in force in that state at the close of the General Assembly of Arkansas, 1883. The statute requiring instruments to be under seal was not in force in Arkansas after the adoption of the Constitution of 1874, which abolished the distinction between sealed and unsealed instruments.

It is further contended that under the Act of Congress of March 3, 1903, 32 Stat. L 996, the Secretary of the Interior, under a proceeding of this kind, did not have the authority or jurisdiction to proceed and undertake to remove the restrictions from the 80 acres of land involved in this suit; that his action for this reason alone renders his order null and void and leaves the lands restricted the same as before and conferred no authority upon Phillip Scott or any one else to sell said lands free of restrictions for $25 per acre or for any other sum.

The Act of March 3, 1903, under which the proceedings in this case were had, reads as follows:

"To pay all expenses incident to the survey, platting, and appraisement of town sites in the Choctaw, Chickasaw, Creek and Cherokee Nations, Indian Territory, as required by sections 15 and 29 of an Act entitled 'An Act for the protection of the people of Indian Territory, and for other purposes,' approved June 28, 1898, and all acts amendatory thereof or supplemental thereto; $25,000; provided, that the money hereby appropriated shall be applied only to the expenses incident to the survey, platting, and appraisement of town sites heretofore set aside and reserved from allotments; and provided, further, that nothing herein contained shall prevent the survey and platting, at their own expense, of town sites by private parties where stations are located along the lines of railroads nor the unrestricted alienation of lands for such purposes when recommended by the Commission to the Five Civilized Tribes and approved by the Secretary of the Interior."

Counsel for plaintiff contends that the words "private parties," in the proviso to the Act of March 3, 1903, refer to the Indian allottee or his heirs, and further, that when a survey and plat has been made, such survey and plat must be recommended to the Secretary by the Commission and by the Secretary approved.

We are unable to so construe the act in question.

The order of the Secretary of the Interior removing the restrictions on the allottee's 80 acres upon the allottee's application and upon the recommendation of the Commission for town-site purposes negatives, we think, the theory of plaintiff that "private parties" must refer to the Indian allottee or his heirs.

It is common knowledge that the Act of March 3, 1903, was in response to a widespread desire on the part of persons to obtain title to business and residence lots on allotted lands where stations were located

along the lines of railroads through the Indian Territory, and to that end Congress gave to the Secretary of the Interior authority to remove restrictions upon allotted lands where they were being used, or would became necessary, for town-site purposes (Crosbie v. Partridge, 85 Okla. 186, 205 Pac. 758).

Furthermore, we think it clear that "private parties," referred to in the Act of Congress of March 3, 1903, were not required to obtain the approval of the Secretary of the Interior of their survey. Nothing in the act indicates such an intention, and no valid reason appears for such action.

We think it clear that it was the intention of the Act of March 3, 1903, where a railroad station existed on an Indian allotment and the establishment of a town site at such place was desirable, to confer upon private parties the right to proceed as in the instant case.

Evidently the Secretary of the Interior did so construe the act when his order was made removing the restrictions from the 80 acres in controversy for town-site purposes.

The construction placed by the Department upon an Act of Congress is entitled to respect, and those who have relied thereon are not lightly to be put in peril. Harris v. Bell, 254 U. S. 103.

In this connection it may be observed that the order of the Secretary of the Interior shows, we think, that this power of attorney given by the allottee to S. J. Checote was submitted to the Secretary of the Interior, along with the application for removal of restrictions.

The Secretary expressly states, in order removing the restrictions, that "Scott is in the penitentiary, and acts through an agent." The making of the order itself, with all of the facts concerning the transaction before him, was an approval of the power of attorney and the order shows upon its face that it was contemplated by Checote and the Dawes Commission that the land should be sold to Randolph, whose name is mentioned in the order, for town-site purposes.

The further contention is made that, because the order of the Secretary removing the restrictions was dated May 12, 1904, and the deed to Randolph was dated May 26, 1904, this deed was invalid because made before 30 days had elapsed after the removal of the restrictions as required by the regulations of the Secretary: and Simmons v. Whittington, 27 Okla. 356, 112 Pac. 1018,

and Rogers v. Noel et al., 34 Okla. 238, 124 Pac. 976, are cited in support of this contention.

In these cases it appears that the Act of Congress of April 21, 1904, and the rules promulgated with reference to the Act of March 20, 1905, were under consideration.

It is conceded by counsel for defendant that the rules with reference to the Act of April 21, 1904, contained a restriction to the effect that a deed should not issue until 30 days after the Secretary had removed the restrictions. The record discloses, however, that the restrictions in the instant case were removed by order of the Secretary of the Interior under the Act of March 3, 1903, as shown by the certificate of the Chairman of the Five Civilized Tribes, and annexed to the Randolph deed on May 26, 1904.

No rule or regulation promulgated with reference to the Act of March 3, 1903, was been called to our attention providing for such 30 day limitation. We are aware of no rule promulgated by the Secretary under the Act of March 3, 1903, requiring the Secretary to approve a deed from the Indian after the restrictions have been removed.

It is urged that the following provision of section 16 of the Supplemental Creek Agreement, approved by Congress on June 30, 1902, that—

"Lands allotted to citizens shall not, in any manner, whatever, or at any time, be incumbered, taken or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior"

—applies to the proceedings had in this case, under the Act of March 3, 1903, removing restrictions for the purpose of creating the town site of Morris.

Many state and federal decisions are cited which hold that conveyances made by an allottee in violation of the above and other similar statutes to other persons are void, and that such conveyances are not susceptible of ratification, and that no rule of estoppel shall ever prevent the assertion of their invalidity.

These cases are based upon the violation of certain Acts of Congress and have no application to a case arising under the Act of Congress of March 3, 1903, providing for the removal of restrictions for town-site purposes, when the record discloses, as it does

here, that the provisions of the act were, in good faith, complied with.

This court had before it, in the Crosbie Case, supra, a state of facts similar in all essential respects as in the instant case, and where it becomes necessary to pass up n the Act of March 3, 1903.

After referring to various acts of Congress applicable to the Five Civilized Tribes, the court said:

"It certainly was never intended by Congress that when a restricted Indian applied to the Secretary of the Interior for permission to sell his land under the Act of March 3, 1903, for town-site purposes. and by the joint action of the Indian and the Secretary of the Interior, made the sale in accordance with the provisions of the Act of Congress and received the fair value of the land, which was paid to the Department, and with full knowledge upon the part of the Indian and the governmental agency that the purchaser would place the land upon the market for sale for town-site purposes, and the land would be improved and sold to the public for homes, that the Indian or the Secretary of the Interior would stand idly by for thirteen years and see valuable improvements placed upon the land and then be heard to say: 'Our construction of the Act of Congress was wrong. We now seek to recover from you and your assignees the land, with all the improvements that you have placed thereon'."

This language is peculiarly applicable to the facts of this case. The allottee, Phillip Scott through his attorney in fact, made application to sell a part of his allotment for town-site purposes. The Commission to the Five Civilized Tribes recommended to the Secretary of the Interior the sale of the said land for the said purpose. The Secretary, after a full and careful examination and investigation of the entire matter, made an order removing the restrictions from 80 acres of the allottee's land, and fixed the price at which it should be sold; the land was surveyed and platted, and was sold for a greater sum than that fixed by the Secretary, and the allottee received the full purchase price paid for the land. The allottee died in 1905, and his sole heir, plaintiff in this case, more than 16 years after the restrictions were removed and after witnessing, during these years, the growth in population and wealth of the town that was es-tablished upon the land in controversy, brought this suit.

"Statutes of the United States, providing for allotment of Indian lands and patents, with restrictions upon alienation, were enacted to protect Indians from schemes and fraudulent practices of white men, not to aid in the unconscionable and inequitable enforcement of stale claims, to the injury of innocent parties, who, in good faith, for value, and by regular procedure, have purchased allotted Indian lands through the Interior Department of the United States." Crosbie v. Partridge, supra.

We conclude that the various propositions of law raised and discussed by counsel for plaintiff in his exceptionally able briefs are decided adversely to plaintiff's contention in McIntosh v. Dill, 86 Okla. 1, 205 Pac. 917; Crosbie v. Partridge, supra.

Furthermore, we think it clear that the order made by the Secretary of the Interior of May 12, 1904, removing the restrictions from the property in controversy, even if it possessed any errors or infirmities, as contended by counsel for plaintiff, is completely validated by the Act of Congress of August 24, 1922, 42 Stat. L. 831, as follows:

"Confirmtion of Deeds. Any conveyance of allotted or inherited Indian lands by any members of the Five Civilized Tribes or his or her heirs, which may have been heretofore approved by the Secretary of the interior, or any order heretofore issued by the Secretary of the Interior authorizing the removal of the restrictions from lands belonging to such Indians under and in accordance with the Acts of Congress of March 1, 1901 (31 Stat. L. 863), June 30, 1902 (32 Stat. L. 503), March 3, 1903 (32 Stat. L. 996), April 21, 1904 (33 Stat. L. 204), April 26, 1906 (34 Stat. L. 145) ,June 21, 1906 (34 Stat. L. 373), and May 27, 1908 (35 Stat. L. 312), or under any of said acts be and the same are hereby confirmed, approved, and declared valid from the date of such conveyance or order; provided that nothing in this act shall be construed to confirm, approve, validate, or affect any conveyance, order, or action procured through fraud or duress."

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 532, § 116; (2) 31 C. J. p. 514, § 79; (3) 31 C. J. p. 514, § 79; (4) 31 C. J. p. 514 § 79.