## THOMAS v. JONES et al.

No. 18900.  Opinion Filed April 15, 1930.

Hal Welch, for plaintiff in error.

Sandlin & Winans, for defendants in error.

TEEHEE, C.  Plaintiff in error, Mary Louise Thomas, a minor, by her guardian, Annie Thomas, brought suit against defendants in error Sid Jones, Mrs. Sid Jones, Lee Jones, Mrs. Lee Jones, Federal Land Bank of Wichita, Kan., Robert King, Robert Q. King, and Sam H. McMahon, to recover of them the possession of a certain tract of land comprising 100 acres situated in Stephens county, to quiet her title thereto, and for an accounting by defendants in error of the rents and profits received by them during their wrongful possession and occupation of the premises.

The cause was tried to the court upon an agreed statement of facts and certain record matter, wherefrom, and by the pleadings in

the cause, the issues framed were as are contained in the propositions hereinafter noted as grounds for reversal of the judgment which went for defendants.

The record shows that the lands involved were a part of the surplus allotment of Choctaw Indian lands allotted to one Peter Foster Thomas, an adult full-blood Mississippi Choctaw Indian.

The allottee, on May 31, 1910, by proper proceedings, was by the county court of Choctaw county adjudged to be an incompetent, with his father, Charlie Thomas, appointed as his guardian. At the hearing for the appointment of a guardian, the county court found that, in order to provide funds for the proper care and maintenance of the incompetent, it would be necessary to sell a part of his allotted lands, and that, as such lands were restricted against alienation thereof by the federal law, the guardian was directed to transmit to the proper federal authorities a certified copy of his letters of guardianship, and that he make application to the Secretary of the Interior for the removal of restrictions against alienation from the lands involved in this litigation.

On June 11, 1910, the guardian filed his petition to sell the lands for the purposes indicated, wherein it was requested "that the court make an order, requesting the United States Secretary of the Interior to remove the restrictions from said lands, that they may be sold for the purpose as herein set out."

The petition was heard on July 11, 1910. The court adjudged a sale of the lands to be necessary and entered a decree of sale thereof in the manner as provided by law. In the decree of sale it is recited, to wit:

"It having been proven to the court that application has been made to the Secretary of the Interior of the United States by the guardian of said incompetent to have the restrictions removed from the said above-described land in order that the same may be sold under this order, and the court being advised that said restrictions will be removed."

On September 29, 1910, the Secretary of the Interior ordered the removal of the restrictions against alienation from the property involved, the order reading, to wit:

"Whereas, Charlie Thomas, guardian of Peter Foster Thomas, incompetent, an allottee of the Choctaw Nations, has made application for the removal of restrictions from the following described lands, to wit (description of lands):

"Now, therefore, I, under the authority vested in me by the Act of Congress approved May 27, 1908 (Public No. 140) and the regulations prescribed thereunder, hereby remove the restrictions from said above-described land, such removal of restrictions to become effective only and simultaneously with the execution of deed by said allottee to the purchaser after said land has been sold in compliance with the directions of the Secretary of the Interior."

On November 28, 1910, the land was sold by the guardian to one C. W. Miller for the sum of $1,125, which sale was by the county court confirmed on April 24, 1911. In the order of confirmation it is recited, to wit:

"And it being proven to the court that the restrictions upon the alienation of the hereinafter described lands have been removed by the Secretary of the Interior of the United States according to law."

On April 25, 1911, the guardian executed a deed covering the controverted property pursuant to the order of confirmation, wherein it was acknowledged that the purchaser, C. W. Miller, had paid to the guardian the purchase price of $1,125, and whereon there was indorsed by the United States Superintendent of the Five Civilized Tribes, under date of May 2, 1911, this certificate, to wit:

"I hereby certify that the land conveyed by this deed has been sold in compliance with the directions of the Secretary of the Interior pursuant to the order dated September 29, 1910, for the removal of restrictions from said land."

Thereupon the purchaser went into possession of the premises, and, through mesne conveyances, title to 60 acres of the tract, at the time of the filing of this suit, was held by the defendant Robert Q. King, and title to 40 acres thereof held by the defendant Lee Jones, all of the other defendants then having no interest in the property, except the Federal Land Bank of Wichita, Kan., which held a mortgage upon the entire tract.

On February 14, 1914, the allottee died intestate. He was survived by his father and mother, Charlie Thomas, the guardian, and Mary Thomas, as his heirs at law, both of whom were also full-blood Mississippi Choctaw Indians.

In 1920, Charlie Thomas died intestate. and left surviving him, as his heirs, his wife, Mary Thomas, and the plaintiff, Mary Louise Thomas, his granddaughter, who was a half-blood Choctaw Indian. On January 4, 1926, Mary Thomas died intestate, whereupon the plaintiff was left as the sole heir at law of the allottee, Peter Foster Thomas, for whom her mother, Annie Thomas, had been appointed as guardian. Thereafter, on

February 10, 1926, the plaintiff, by the guardian, filed this action with the result as above noted, whereupon this appeal followed.

Plaintiff complains of the judgment under three propositions, these in the order of their statement being, to wit:

"The guardian's deed and order of confirmation of sale are void because the land was inalienable at the time the petition for sale of real estate was filed, and at the time the decree of sale was entered, and, therefore, the court acquired no jurisdiction of the proceedings.

"The Curative Act of Congress of August 24, 1922, approving and confirming conveyances of any member of the Five Civilized Tribes of allotted or inherited lands, which may have been heretofore approved by the Secretary of the Interior, does not affect this conveyance.

"The statute of limitations has never begun to run in this case and plaintiff is not barred or estopped to maintain this action for the reason that the orders of the county court of Choctaw county, Okla., and the guardian's deed, were void, and at all times after the guardianship sale the allottee, Peter Foster Thomas, was an incompetent, so adjudged by order of the probate court, and was never restored to competency prior to his death, at which time the land was inherited by his father and mother, who were adult full-blood Choctaw Indians, duly enrolled as such; and the land passed from them at their respective deaths to the plaintiff in error herein, who was at that time, and now remains, a minor under the age of 18 years."

As plaintiff's contentions thereunder question the legal sufficiency of the guardian's deed as an instrument of conveyance of title, which, in our view of the case, must turn on the question of whether or not the conveyance comes within the purview of chapter 189, 42 Stat. 831, these propositions may properly be considered together and will be so treated.

Though the county court is vested with full and complete power in the field of its probate jurisdiction (Whitehouse Lumber Co. v. Howard, 142 Okla. 163, 286 Pac. 327), which includes the power to sell the estate of persons adjudged to be incompetent (art. 7, sec. 13, Constitution of Oklahoma), yet, under prior decisions by this court, the county court does not possess the power to decree the sale of lands allotted to Indian citizens from which the federal restrictions against alienation thereof had not been removed at the time of adjudication and decree of sale. Dosar v. Hummell, 80 Okla. 152, 214 Pac. 718, and LeFlore v. Steen, 123 Okla. 84, 251 Pac. 1022.

In the Dosar Case the court ruled, to wit:

"The Act of Congress of May 27, 1908, entitled. An act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes,' expressly provided in section 4 thereof that the lands from which restrictions were thereby removed should not be subject to any personal claim or demand arising prior to the removal of restrictions therefrom, and where F., as guardian of D., a minor citizen of the Seminole Tribe of Indians, of one-quarter blood, petitioned, on March 10, 1908, the county court of Seminole county to sell said land for the purpose of paying an indebtedness contracted in December, 1907, and the county court on April 4, 1908, entered the order authorizing the guardian to sell said real estate, held: That the county court had no power to order the allotted lands of the said minor sold at that time for any purpose, and said order was void; and that the deed made in pursuance thereof conveyed no estate to the grantee therein named."

In the LeFlore Case the court held:

"'The guardian of a one-eighth Choctaw Indian by blood filed and presented to the county court of Bryan county, July 10, 1908, a petition to sell the surplus allotment of said minor for support and investment, and the court made an order on same day finding the sale necessary and setting August 8, 1908, for hearing the allegations of the petition on the proof and directing notice be given as by law provided, and on said date the court made an order of sale authorizing the guardian to sell the land, which was accordingly done and by the court confirmed, and deed executed. Held, the land described in the petition to sell was subject to the restriction imposed by the acts of Congress and which were not removed by the act of May 27, 1908, till July 26, 1908. Held, further, that the status of the facts as they existed, and as stated in the petition at the time the petition was first presented to the court and filed, determines the jurisdiction of the court over the subject-matter of the sale proceedings. Held, further, the court was without jurisdiction to authorize the sale or to confirm it and the deed executed by the guardian was void upon the face of the record."

While those cases involved the sale of lands of minors, from which the restrictions against alienation were removed upon the coming into effect of the removal of restrictions by Act of Congress approved May 27, 1908, chapter 199, 35 Stat. 312, in the first case subsequent to the decree of sale, and, in the second, subsequent to the filing of the petition and prior to the decree of sale, though after judicial action had been had on the petition, yet the principles thereof are equally applicable to the case here, in which, as noted, the removal of restrictions were

by-order of the Secretary of the Interior. There is no legal distinction between the removal of restrictions by operation of the statute and such removal by departmental order, for both are the act of the law.

The judicial proceedings being invalid ab initio, pursuant to which the sale was made, rendered the guardian's deed executed thereunder ineffective as a muniment of title to the property described therein, and therefore left the land under a conditional removal of restrictions as shown by the departmental order, which was sufficient to prevent the running of the statutes of limitations against either the allottee during his lifetime (Coker v. Watson, 123 Okla. 199, 252 Pac. 829), or as against his immediate heirs who were of full Indian blood. Brown v. Minshall, 83 Okla. 98, 202 Pac. 1037. Upon the death of the immediate heirs, plaintiff stepped into their shoes, and by reason of her minority, the statute of limitations did not foreclose her right to maintain this action. Tiger v. Brown, 130 Okla. 83, 265 Pac. 124.

Though the sale proceedings, by reason of their want of validity, gave no efficacy to the guardian's deed as an instrument of conveyance of title, does such conveyance come within the class declared to be valid by said chapter 289, 42 Stat. 83, commonly referred to as the Curative Act of Congress, approved August 24, 1922? That act provides, to wit:

"Confirmation of Deeds. That any conveyance of allotted or inherited Indian lands by any member of the Five Civilized Tribes, or his or her heirs, which may have been heretofore approved by the Secretary of the Interior, or any order heretofore issued by the Secretary of the Interior authorizing the removal of restrictions from lands belonging to such Indians under and in accordance with, or purporting to be under and in accordance with, the Acts of Congress of March 1, 1901 (31 Stat. L. 863), June 30, 1902 (32 Stat. L. 503), March 3, 1903 (32 Stat. L. 996), April 21, 1904 (33 Stat. L. 204), April 26, 1906 (34 Stat. L. 145), June 21, 1906 (34 Stat. L. 373), and May 27, 1908 (35 Stat. L. 312), or under any of said acts, be and the same are hereby confirmed, approved, and declared valid from the date of such conveyance or order; provided that nothing in this act shall be construed to confirm, approve, validate, or affect any conveyance, order, or action procured through fraud or duress."

It is to be observed that plaintiff's contentions of the invalidity of the instrument of conveyance do not go to the substance thereof in the sense that it was procured by fraudulent means which in law would be sufficient

to vitiate the same in a proceeding brought for that purpose. There is also a total absence of any contention that full value was not paid for the property.

It is further to be observed that the sale proceedings were had in full recognition the fact that the lands were restricted; that a sale thereof could not be had until the removal of restrictions by the Secretary of the Interior; and, that the sale proceedings, both prior and subsequent to the date of the departmental order, were not questioned in respect to their regularity under the state law, hence, plaintiff's contentions of invalidity go to the form of the transaction in that its validity fails by reason of a misapplication of the law in the proceedings to sell.

At the time of making the order of removal of restrictions, the Secretary of the Interior was cognizant of the fact that the county court had then decreed a sale of the lands, and that a deed of conveyance could only be made by a guardian pursuant to the regulations of sale fixed by the state law. The regularity of the sale proceedings and the execution of the deed thereunder were attested by the proper federal authorities by the fact of endorsement of regularity on the guardian's deed by the Superintendent of the Five Civilized Tribes, which was equivalent to approval of the deed by the Secretary of the Interior. Coker v. Watson, supra. The conveyance, therefore, cannot be said to have been made in violation of law in the sense of a defiance thereof, which distinguishes this case from many prior cases considered by this court wherein the conveyances were held to be void because of execution thereof in defiance and in violation of law.

This distinction, we think, classifies the conveyance as of the class to which the Curative Act relates. The fact that the transaction was invalid raises no barrier to prevent the operation of the act thereupon. McIntosh v. Dill, 86 Okla. 1, 205 Pac. 917. As a legal proposition, it was within the power of the Congress to have provided just such a procedure as was followed, for its power is plenary in the field of Indian legislation as has been repeatedly held from the time the national government undertook to solve the Indian problem.

It is apparent that the Congress, in the enactment of the law, had in mind just such a case as is here presented, for the intent and purpose of the act was to validate conveyances which may be invalid, where the attempted alienation was made in good faith and with the sanction of the Secretary of the Interior. As the conveyance here is

unaffected by the taint of fraud, and unattended by duress, with no overreaching as to value, and entered into in good faith in consonance with the established policy of the federal government in respect to the class of the particular property involved, the efficacy of the guardian's deed as an instrument of conveyance of title was established by the act, for it is declared to be valid, and the transaction was thereby rendered incapable of being judicially overthrown.

This view of the law is sustained by the debate on the purpose of the act at its adoption by the House Representatives. Volume 62, part. 6, Cong. Rec. 6139-41, inclusive. It there appears that the act had its origin in the fact that an allottee, at nisi prius, had succeeded in having cancelled as void the transfer of certain allotted lands from which the restrictions had been removed by the Secretary of the Interior to be sold for town site purposes under an act held by the trial court to have been repealed by a later act then in force at the time of such removal of restrictions and sale of the property. This court held the transaction to be valid. Crosbie v. Partridge, 85 Okla. 186, 205 Pac. 758.

Having lost in this court, the allottee purposed to appeal the case to the Supreme Court of the United States, and during pendency of the appeal further disturb what had theretofore been regarded as settled rights of about 200 purchasers of the lots into which the conveyed land had been parcelled, and whereon valuable improvements had been placed by the purchasers on the faith of the approval of the original conveyance by the Secretary of the Interior. As there was no contention in the case that the allottee had not received full value of the land at the sale, or had been overreached through fraud or duress, the Congress deemed it to be inequitable to permit further litigation herein, and by the Curative Act quieted the title to the respective parcels of property in the purchasers, and thus foreclosed further litigation thereover.

The debate on the bill also showed that it was the intent and purpose of the act to quiet the title in all other cases of transfers theretofore entered into that would come within the language thereof, but, of course, would not extend to cases wherein the transfers had theretofore been adjudicated to be invalid by the court of last resort, or had been procured by either fraud or duress. This view of the law finds support in principle by this court in Coker v. Watson, supra, and Scott v. Morris National Bank, 109 Okla. 276, 235 Pac. 912. That this is the right view of the law, it appears to us, cannot be controverted, as the act speaks for itself in unmistakable language.

We, therefore, conclude and hold that the guardian's deed in this case, though invalid at its execution by reason of the invalidity of the sale proceedings had in the county court, having been executed with the approval of the Secretary of the Interior, was rendered valid by force of the Curative Act of Congress, approved August 24, 1922, for which reason the judgment of the district court is affirmed.

BENNETT, Commissioner, concurs in the result only.

HERR, FOSTER, DIFFENDAFFER, and EAGLETON, Commissioners, concur in the result, but dissent to the law announced in the first paragraph of the syllabus.

By the Court: It is so ordered.

Note.—See "Indians," 31 C. J. §79, p. 514, n. 96; p. 516, n. 99. "Insane Persons," 32 C. J. §455, p. 715, n. 95.